WHITE *v.* REVIEW BOARD OF INDIANA EMPLOYMENT SECURITY DIVISION.

[No. 17204.   Filed January 19, 1944.]

*Walter C. Reese*, Shelbyville, for the appellant.

*James A. Emmert*, Attorney General, *Frank Hamilton*, First Assistant Attorney General, *Fred R. Bechdolt*, Chief Counsel, Employment Security Division, for the appellee.

ROYSE, P. J.—This is an appeal from a decision of the Review Board of Indiana Employment Security Division imposing the penalty provided by § 7-(f), (1), (2), Indiana Employment Security Act, § 52-1507 (f), (1), (2), Burns' 1933 (Supp.), which provides as follows:

"(f)   Disqualification for Benefits.   An individual shall be ineligible for waiting period or benefit rights:
"(1)   For the week in which he has left work voluntarily without good cause or has been discharged for misconduct in connection with his work, and for the three [3] next following weeks,

in addition to the waiting period; Provided, however, That if such individual receives dismissal wages covering a period of time subsequent to such week the disqualification shall become effective at the end of such period.

"(2) If the division finds that being totally, partially or part-totally unemployed, and otherwise eligible for benefits, he has failed, without good cause, either to apply for available, suitable work when so directed by the director or the deputy, or to accept suitable work when found for and offered to him by the director or the deputy or by an employing unit, or to return to his customary self-employment (if any) when so directed by the director or the deputy. Such ineligibility shall continue for the week in which such failure occurred and for the three [3] next following weeks in addition to the waiting period.

"In determining whether or not any such work is suitable for an individual, the division shall consider the degree of risk involved to such individual's health, safety and morals, his physical fitness and prior training and experience, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

"Notwithstanding any other provisions of this act, no work shall be deemed suitable, and benefits shall not be denied under this act to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (a) If the position offered is vacant due directly to a strike, lockout, or other labor dispute; (b) If the remuneration, hours or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (c) If as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining a bona fide labor organization.

"In addition to the disqualifications set forth and provided in paragraphs 1 and 2 of this subsection, the total amount of benefits otherwise payable to

any such individual so disqualified shall be reduced by an amount equal to six [6] times the weekly benefit amount of such individual."

Appellant was employed as a band saw operator by appellee, The Old Hickory Furniture Company, Martinsville, Indiana, hereinafter referred to as "employer," and quit said employment on June 11, 1942. Subsequently, on June 24, 1942, he filed his claim for unemployment compensation benefits. Pursuant to § 52-1508-(b), Burns' 1933 (Supp.), his claim was examined by a deputy who found that appellant left his work voluntarily without good cause and was subject to the penalty provided for in § 52-1507-(f), (1), (2), *supra*. Within the time allowed, appellant requested in writing a hearing of his claim by a referee. In the application signed by appellant is the following statement of his contention: "Employer docked me a half hour for being one minute late. Docked me fifteen minutes on another occasion for being one minute late. Docked me fifteen minutes for forgetting to punch time clock. Took (9) nine hours overtime for being off sick. I am willing to return to work if said employer will pay me what he owes me." The employer, in response to this application, filed the following answer: "Mr. White operated a band saw while he was here. We have no band sawer at the present time and can use one to good advantage. We know of no reason why Mr. White should refuse to work. Our records give his address as R. R. # 1, Edinburg, Indiana."

The referee, after hearing the evidence, affirmed the penalty provided in § 7-(f), *supra,* imposed by the deputy. Within the time provided by § 8-(k), § 52-1508-(k), Burns' 1933 (Supp.), appellant appealed to the review board, which board, at his request, heard additional evidence and thereafter affirmed the decision

of the referee. Pursuant to § 8-(1), § 52-1508-(1), Burns' 1933 (Supp.), appellant appealed to this court and assigns as error here that the decision of the review board is contrary to law.

Appellant contends that the decision of the review board is contrary to law because it contravenes the provisions of § 7-(f), *supra,* and the evidence is not sufficient to sustain the conclusion and finding of the board.

Appellee questions the sufficiency of appellant's brief to present any question because of the failure to comply with Rule 2-17-(f), Rules of the Supreme Court. While the brief does not strictly comply with this rule, we believe there has been a good-faith effort to comply with it and therefore proceed to a consideration of the questions raised.

Section 52-1508-(k) (1), *supra,* provides, in appeals to this court, "Any decision of the review board shall be conclusive and binding as to all questions of fact." Therefore, this court will not weigh the evidence and will consider only that evidence most favorable to the decision of the board. *Scott* v. *Rhoads, et al.* (1943), *ante,* p. 150, 51 N. E. (2d) 89; *News Publishing Co.* v. *Verweire, et al.* (1943), 113 Ind. App. 451, 49 N. E. (2d) 161; *Review Board of Unemployment Compensation Division of Department of Treasury et al.* v. *Mammoth Life & Accident Ins. Co.* (1942), 111 Ind. App. 660, 42 N. E. (2d) 379.

With these rules as our guide, we proceed to a consideration of the evidence as disclosed by the record.

Appellant was an experienced band saw operator. At the time he went to work for the employer it was explained to him that the employer had a rule of many years standing providing that employees would be docked for fifteen minutes of working

time for failure to report for work on time, or for failure to punch the time clock; that such rule was necessary to operate the plant efficiently. On three or four occasions when appellant was late, or failed and/or refused to punch the time clock he was penalized in accord with this rule. He continued as such employee for a considerable time after such deductions had been made. The employer was subject to the Federal Wage and Hour Law and paid overtime to employees who worked more than forty hours per week. Appellant was paid overtime for all time he worked in excess of forty hours per week. At the hearing before the referee his major contention was that he quit his employment because of a dangerous condition caused by a failure to have a bottom guard on the band saw. There was evidence from which the board could find that there was such a guard on this saw; that this guard was an old one which, for the purpose of efficiency in getting out the work, should be replaced, but that it did not endanger the safety of appellant or that of any other person operating the saw. The employer testified that he had endeavored to obtain a new guard for the purpose of efficiency, but was unable to get a priority which would enable him to do so. The employer at the hearing stated he was ready at any time to take appellant back in his employ. There was other evidence from which the board might reasonably have inferred that appellant quit his employment in an attempt to coerce the employer to give him special privileges.

Are these facts sufficient to sustain the decision of the board? We believe they are. It is undisputed that appellant left his employment voluntarily. Therefore, the only question which the board had to determine was whether or not he had good cause for quitting his work.

The evidence clearly indicates to us that giving due consideration to appellant's experience, training, etc., the work furnished appellant did not unreasonably endanger his health, safety and morals; that the wages, hours or other conditions of his work were not less favorable than those prevailing for similar work in the locality.

Furthermore, in considering the facts presented by this case, it is well to keep in mind the purposes for which this law was enacted. Section 1 of the act, *supra,* in declaring its purposes, provides in part as follows:

"The enactment of this measure to provide for payment of benefits to persons unemployed through no fault of their own, to encourage stabilization in employment, and to provide for a state employment service is, therefore, essential to public welfare; and the same is declared to be a proper exercise of the police powers of the state."

The word "fault," as used in this section, has been defined by our Supreme Court as meaning "failure or volition." *Walter Bledsoe Coal Co. et al.* v. *Review Board of Employment Security Division of Department of Treasury et al.* (1943), 221 Ind. 16, 46 N. E. (2d) 477, 479. The persons whom the act intends to benefit are those who are out of employment because the employer is unable, for reasons beyond the employee's control, to provide work, or the proffered work endangers the health, safety and morals of the employee, or the working conditions or wages are below the standards prevailing in the community for the same type of work. On the record before us the appellant was not within the class for whose benefit the law was enacted.

The decision of the review board is affirmed.

NOTE.—Reported in 52 N. E. (2d) 500.