ARTHUR J. MARTINEAU vs. DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & another.

Worcester.   February 6, 1952. — May 20, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Employment Security*, Stoppage of work through labor dispute.  *Labor and Labor Union.  Interstate Commerce.  Evidence*, Presumptions and burden of proof.  *Words*, "Directly interested."

The mere fact that a company manufactured molded plastics at two plants in a Massachusetts city was insufficient to show that the company was subject to the 1947 Federal labor management relations act.  [47]

Even if the 1947 Federal labor management relations act was applicable and a working foreman was a "supervisor" within that law, it was error to rule that because of that law he could not be "directly interested" in a labor dispute within § 25 (b) (1) of the employment security law, G. L. (Ter. Ed.) c. 151A, as appearing in St. 1941, c. 685, § 1.

One not a participant in a labor dispute is nevertheless "directly interested" therein within § 25 (b) (1) of the employment security law, G. L. (Ter. Ed.) c. 151A, as appearing in St. 1941, c. 685, § 1, where his wages, hours, or conditions of work will be favorably or adversely affected by the outcome.  [49]

A conclusion that an employee not participating in a strike at his place of work stood to benefit by the strike and was "directly interested" therein within § 25 (b) (1) of the employment security law, G. L. (Ter. Ed.) c. 151A, as appearing in St. 1941, c. 685, § 1, was not justified where it appeared merely that the strike was "over terms and conditions of [a] renewal" contract between the employer and a labor union which was exclusive bargaining agent of the employees.

A conclusion that an employee at whose place of work there was a stoppage of work because of a strike belonged to a "grade or class of workers" defined in § 25 (b) (2) of the employment security law, G. L. (Ter. Ed.) c. 151A, as appearing in St. 1941, c. 685, § 1, was not justified where, even assuming that he belonged to the same "grade or class" as certain other employees "participating in or financing or directly interested in" the strike, it did not appear that such other employees had worked at the same premises where he had worked.

One seeking benefits under the employment security law, G. L. (Ter. Ed.) c. 151A, as appearing in St. 1941, c. 685, § 1, for unemployment due to a stoppage of work through a labor dispute has the burden of proving that he comes within the exceptions defined in (1) and (2) of § 25 (b) which make that subsection inapplicable to disqualify him.  [51]

PETITION, filed in the District Court of Leominster on May 17, 1949, for review of a decision of the board of review in the division of employment security.

The case was heard by *Robbins*, J.

*Francis E. Kelly*, Attorney General, *Edward J. Nantoski*, Assistant Attorney General, *& John A. Brennan*, for the director of the division of employment security, submitted a brief.

No argument nor brief for the petitioner.

SPALDING, J. The respondent director appeals from a decision of the District Court which reversed a decision of the board of review denying unemployment benefits to the claimant. G. L. (Ter. Ed.) c. 151A, § 42, as appearing in St. 1943, c. 534, § 6, as amended by St. 1947, c. 434.

The director determined that the claimant's unemployment was due to a labor dispute and was not compensable under G. L. (Ter. Ed.) c. 151A, § 25 (b) (1), (2), as appearing in St. 1941, c. 685, § 1. Upon review before an examiner the director's determination was affirmed. The board of review denied the claimant's application for review, thereby adopting the decision of the examiner. § 41, as appearing in St. 1941, c. 685, § 1. *Wagstaff* v. *Director of the Division of Employment Security*, 322 Mass. 664, 665.

The claimant was employed as a working foreman by the Standard Pyroxoloid Company (hereinafter called the company), which operates two plants in Leominster. The company is engaged in the manufacture of molded plastics and employs approximately sixty workers. The United Plastic, Celluloid, and Novelty Workers, Local 61, affiliated with the C. I. O., is recognized by the company as the exclusive bargaining agent for all its employees, with certain exceptions not herein material. The recognition agreement further provided that working foremen were excused from membership in the union, but were eligible therefor.

Upon expiration of the contract between the union and the company on December 31, 1948, differences arose over the terms and conditions of its renewal. To enforce its demands, the union called a strike on January 10, 1949,

and established picket lines around each of the company's plants. As a result of the strike, production at both plants was suspended completely.

Though eligible for membership in the union as a working foreman, the claimant was not a member. He had nothing to do with the calling of the strike and did not participate in it in any way. He was at all times ready and willing to work, but could not because of the suspension of work brought about by the labor dispute. Other working foremen employed by the company, however, were members of the union. In the past, any concessions granted to them as a result of union negotiations with the company were applied to the claimant and other nonunion working foremen. Similarly, any advantages realized by the union in the present dispute would inure to the claimant despite his lack of union affiliation.

The foregoing facts appear from the findings of the examiner or from evidence which is not disputed. The findings of the examiner were supported by evidence. *Wagstaff* v. *Director of the Division of Employment Security*, 322 Mass. 664, 665. From these facts the examiner concluded that the claimant was ineligible for unemployment benefits for the reason that he was directly interested in the labor dispute which caused his unemployment and also because he was of a grade or class of workers of which there were members who were actively participating in and directly interested in the dispute. G. L. (Ter. Ed.) c. 151A, § 25 (b) (1), (2).[1]

---

[1] Section 25 reads: "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter for — . . . (b) Any week with respect to which the director finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he was last employed; provided, that this subsection shall not apply if it is shown to the satisfaction of the director that — (1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and that (2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if, in any case, separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department may, for the purposes of this subsection, be deemed a separate factory, establishment or other premises."

At the hearing in the District Court, no further evidence was introduced, and counsel made arguments based on the record of the board of review. The judge decided that the board erred in failing to consider the effect of U. S. C. (1946 ed.) Sup. IV, Title 29, § 152 (3), the national labor relations act as amended by the labor management relations act, 1947,[1] which excludes "any individual employed as a supervisor" from the definition of "employee." Continuing he said: "It is plain therefore that despite the provisions in the contract between the company and the union making the union the agent of working foremen, the law bars the union from such agency for under the law the union can act as agent only for employees." He ruled, therefore, that the claimant met the requirements of G. L. (Ter. Ed.) c. 151A, § 25 (b) (1), (2), and was entitled to unemployment benefits.

We are of opinion that this was error. The labor management relations act, 1947, is applicable only to those enterprises in which labor disputes and work stoppages would affect interstate commerce. *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.* 301 U. S. 1, 29–32. The record before us is barren of evidence as to the nature and extent of the operations of the company. It appears simply that the company manufactures molded plastics at two plants in Leominster. These facts without more do not furnish a basis for a decision that the company is subject to Federal control.

Even if we assume for present purposes that the Federal law is applicable, it does not follow that the claimant might not be "directly interested" in the labor dispute. The labor management relations act, 1947, amended the national labor relations act under which supervisory employees were accorded all the privileges of collective activity (*Packard Motor Car Co.* v. *National Labor Relations Board*, 330 U. S. 485) by excluding "any individual employed as a supervisor" in defining "employee." § 152 (3). Section

---

[1] This is commonly known as the Taft-Hartley act.

152 (11) defines "supervisor" as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." Supervisory status within the meaning of this section depends on the exercise of independent judgment with respect to any of the powers specifically listed. *National Labor Relations Board* v. *Brown & Sharpe Manuf. Co.* 169 Fed. (2d) 331 (C. C. A. 1). *Ohio Power Co.* v. *National Labor Relations Board*, 176 Fed. (2d) 385 (C. A. 6). It is unnecessary for us to determine on the somewhat meager record here whether the duties performed by the working foremen employed by the company bring them within the statutory definition. Even if they are "supervisors," it is clear that the labor management relations act, 1947, does not deprive them of the right to join a labor organization. Section 164 (a) provides: "Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining." The effect of the amending act is to withhold from "supervisors" protection against employer interference with their organizational activities which they had formerly enjoyed. *L. A. Young Spring & Wire Corp.* v. *National Labor Relations Board*, 163 Fed. (2d) 905 (C. A. D. of C.). *National Labor Relations Board* v. *Edward G. Budd Manuf. Co.* 169 Fed. (2d) 571 (C. C. A. 6). The evidence in the present case discloses that the company has continued to recognize the union as the bargaining agent of working foremen included in its membership. Whether or not the union represents the claimant, a non-member working foreman, is of no consequence to the

question before us, for in either event any benefits realized by the union in the present dispute may conceivably inure to the claimant. Whether the strike here would affect the claimant in such a way as to make him "directly interested" in it will be discussed presently. The judge in effect ruled that as matter of law the claimant could not benefit from the strike.

It remains to consider whether there are any other grounds for supporting the decision of the court below. It is plain that the claimant's unemployment occurred in consequence of a labor dispute which brought about a stoppage of work. The claimant was not a member of the union which initiated the strike and he refrained from any activity in support of it, and the contrary is not contended. His position is, therefore, that he should not be deprived of benefits for a loss precipitated entirely by the efforts of others. That there is force in this argument cannot be denied. The statute, however, does not confine disqualification to those employees who participate in or finance the labor dispute. In addition, it withholds benefits from employees who are "directly interested in the labor dispute." We have not heretofore had occasion to construe these words. Most of the statutes in other jurisdictions contain provisions identical with or similar to § 25. Although the authorities are not uniform, the prevailing view is that a person is "directly interested" in a dispute when his wages, hours, or conditions of work will be affected favorably or adversely by the outcome. It is of no consequence that the person is not a member of the union conducting the strike or that he may not be in sympathy with its purposes. *Huiet* v. *Boyd*, 64 Ga. App. 564. *Kemiel* v. *Review Board, Indiana Employment Security Division*, 117 Ind. App. 357. *Auker* v. *Review Board, Indiana Employment Security Division*, 117 Ind. App. 486. *Nobes* v. *Unemployment Compensation Commission*, 313 Mich. 472. See *Chrysler Corp.* v. *Smith*, 297 Mich. 438. Contra *Kieckhefer Container Co.* v. *Unemployment Compensation Commission of New Jersey*, 125

N. J. L. 55; *Wicklund* v. *Commissioner of Unemployment Compensation*, 18 Wash. (2d) 206. We accept this view as the law of this Commonwealth.

The board based its decision on its conclusions that, although the claimant did not actively participate in the strike, he stood to gain by it and hence was "directly interested" in the dispute under § 25 (b) (1). The board also in substance concluded that the requirements of § 25 (b) (2) had not been met in that the claimant was of a "grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute."

We are of opinion that these conclusions are not supported by the evidence. It does not appear what the purposes of the strike in question were. On this record it cannot be said, as the board concluded, that the claimant would have derived any benefit from the strike. It appears merely that the strike was "over terms and conditions of [a] renewal" contract. If the labor dispute here involved wages, hours, or conditions of work, then, as we have stated above, the board would have been justified in finding that the claimant was "directly interested" in the dispute. Possibly and perhaps probably the strike involved issues of this sort, but on this record it is not possible to say so. There is therefore an insufficient basis for disqualifying the claimant under § 25 (b) (1).

Likewise we think that the evidence would not support the conclusion that the claimant was disqualified under § 25 (b) (2), for even if we assume that he belonged to the same grade or class as the working foremen who immediately prior to the strike belonged to the union and were "participating in or financing or directly interested in the dispute" it does not appear that these foremen worked at the same premises where the claimant was employed.

The case, we think, should be remanded to the board for further findings on the issues just discussed. The lack of

evidence on these points was undoubtedly due to inadvertence. See *Ford Motor Co.* v. *Director of the Division of Employment Security*, 326 Mass. 757, 766. A word should be said concerning procedure, as it is likely to be of importance in the rehearing of the present case and in other cases coming before the board. Section 25 provides generally that benefits are not to be paid to a person where his unemployment is "due to a stoppage of work which exists because of a labor dispute." But these provisions do not apply "if it is shown to the satisfaction of the director" that the claimant comes within the exceptions defined by subsections (b) (1) and (2). This means that the claimant has the burden of proving that he comes within these exceptions. *Johnson* v. *Pratt*, 200 S. C. 315, 345. *Queener* v. *Magnet Mills, Inc.* 179 Tenn. 416, 426.

The decision of the District Court is reversed and the case is remanded to the board of review for further proceedings in conformity with this opinion.

*So ordered.*