WOLF'S, appellee, v. IOWA EMPLOYMENT SECURITY COMMISSION et al., appellants.

No. 48290.

(Reported in 59 N.W.2d 216)

1000

JUNE 9, 1953.

F. D. Riley and E. W. Fritz, both of Des Moines, for appellants.

Gamble, Read, Howland, Gamble & Riepe, of Des Moines, for appellee.

Pike, Sias, Butler & Hoxie, of Waterloo, and Gibson, Stewart & Garrett, of Des Moines, amici curiae,

GARFIELD, J.—This appeal presents the question whether an individual is disqualified for benefits under the Iowa Employment Security law (chapter 96, Code, 1950) if he leaves his work and moves to another climate because of his health.

The facts are not in dispute. Claimant-Mrs. Harris moved to Des Moines in 1950 from Buffalo, New York, because she had relatives here and thought living would be less expensive. She had worked in Buffalo for one employer four and one-half years. She had sinus trouble which affected her eyes in Buffalo and her doctor there advised her to move to a high, dry climate because of her condition. For about eight months just before October 6, 1951, claimant was employed as a saleslady by plaintiff-Wolf's, a retail store in Des Moines. She then quit her work at Wolf's because of her sinus infection and moved to Phoenix, Arizona, which has a higher, drier climate, to try to improve the condition of her health.

Claimant's sinus condition was much better in Phoenix but she was unable to secure suitable employment there and filed claim for benefits under chapter 96, Code of Iowa, 1950. A deputy of the Iowa Employment Security Commission determined that Mrs. Harris was disqualified for such benefits under Code section 96.5, paragraph 1, because she quit her work at Wolf's "voluntarily without good cause attributable to [her] employer." Upon claimant's appeal, the appeal tribunal affirmed the deputy's decision. Upon claimant's appeal to the commission it held, with two members concurring and one dissenting, she was not disqualified for benefits.

Wolf's petitioned the district court for review of the commission's decision and it was set aside on the grounds, as stated in Code section 96.6, paragraph 10, subparagraphs 3 and 4, "the facts found by the commission do not support the order" and "there is not sufficient competent evidence in the record to warrant the making of the order." From the district court's decree the commission and claimant have appealed to us. The procedure to be followed by the commission's deputy and in successive appeals from his decision is outlined in Code section 96.6. And see Wolfe v. Iowa Unemployment Comp. Comm., 232 Iowa 1254, 1256, 7 N.W.2d 799, 800.

Code section 96.5, entitled "DISQUALIFICATION FOR BENEFITS", provides in part:

"Causes. An individual shall be disqualified for benefits:

"1. *Voluntary quitting*. If he has left his work voluntarily without good cause attributable to his employer, if so found by the commission."

The words "attributable to his employer" did not appear in the original Act. (Chapter 4, Laws 46th G.A., Extraordinary Session, and chapter 102, Laws 47th G.A.) They were added in 1939 by chapter 64, Laws 48th G.A. See Iowa Public Service Co. v. Rhode, 230 Iowa 751, 755, 298 N.W. 794, 796, 797; Moulton v. Iowa Employment Security Comm., 239 Iowa 1161, 1167, 34 N.W.2d 211, 214.

A majority of appellant commission held and now contends the condition of claimant's health made it necessary for her to leave her work at Wolf's, such leaving was therefore involuntary and it is immaterial whether it was "without good cause attributable to [her] employer." It is argued the quoted words of section 96.5 have no application unless it first appears a claimant left his work voluntarily.

The trial court rejected the argument and held Mrs. Harris left her work voluntarily "without good cause attributable to [her] employer." We affirm the trial court.

We think appellants' argument is unsound and contrary to our own decisions and many others. The effect of the argument is to read out of the statute the words "attributable to his employer", added by the Forty-eighth General Assembly. The argument amounts to this: if an employee has *any* good cause, even though not attributable to his employment, for leaving his work his act in so doing is necessarily involuntary, but if the good cause for leaving is attributable to the employment such leaving may be voluntary.

Appellants concede claimant left her work at Wolf's without good cause attributable to her employer. There is no sufficient competent evidence that her sinus condition was due to her work there. It was a chronic condition from which she suffered in Buffalo. While the condition justified her leaving Wolf's and Des Moines it was not the result of her employment there. Claim-

ant testified she was satisfied with the work at Wolf's and "they were very nice to me." Wolf's auditor said Mrs. Harris did not leave because she was not needed and "we could use her right now if she were here."

There are several decisions under the many statutes similar (although not all identical) to ours that an employee is not disqualified for benefits by leaving work due to illness caused by the employment or directly incident thereto. Fannon v. Federal Cartridge Corp., 219 Minn. 306, 18 N.W.2d 249, 158 A. L. R. 389, cited by appellants, is such a precedent. But no decision of an appellate court has come to our attention which holds, under a statute like ours, that leaving work due to illness not directly incident to the employment does not disqualify the employee for unemployment benefits.

The holding in Alabama Mills v. Carnley, 35 Ala. App. 46, 44 So.2d 622, 14 A. L. R.2d 1301, where a woman left her work because of pregnancy, is based on a special statutory provision applying to such a situation. See 81 C. J. S., Social Security and Public Welfare, section 166b. The court recognizes in the Carnley case (page 51 of 35 Ala. App., page 626 of 44 So.2d, page 1307 of 14 A. L. R.2d) that pregnancy is "not within the usual reach of Section 214(B)" which is very similar to our section 96.5, paragraph 1.

In Fannon v. Federal Cartridge Corp., supra, 219 Minn. 306, 311, 312, 18 N.W.2d 249, 252, 158 A. L. R. 389, 394, 395, the principal authority cited by appellants, claimant's disability was due to the heavy work she was required to do in an ammunition factory in a temperature of 132 degrees. The opinion states: "* * * it is undisputed that * * * such illness and disability were directly connected with her employment. * * * of course, the claimant has the burden of establishing that the disease or illness * * * was due to such employment * * *."

Moulton v. Iowa Employment Security Comm., supra, 239 Iowa 1161, 1169, 34 N.W.2d 211, 215, correctly says of the Fannon case, "* * * it was held that the illness and disability causing the claimant to leave her employment must have been directly connected with her employment."

The Moulton case holds that a woman who left her work because of pregnancy did so "voluntarily without good cause

attributable to [her] employer" and was disqualified for benefits under section 96.5, paragraph 1, supra. Appellants' contentions here are contrary to that decision.

Both our Moulton case, at page 1165 of 239 Iowa, and Wolfe v. Iowa Unemployment Comp. Comm., supra, 232 Iowa 1254, 1257, 7 N.W.2d 799, 801, cite with approval Margoris v. United States Railroad Admn., 187 Iowa 605, 608, 174 N.W. 371, where an order of the director general of railroads during World War I provided that a wage increase should not be paid employees who left the service voluntarily. We held (page 608 of 187 Iowa, page 372 of 174 N.W.) "* * * we think plaintiff must be held * * * to have left the service of the railroad company voluntarily, even though he did so because of physical disability." Of the Margoris case and two others we say in Kollman v. McGregor, 240 Iowa 1331, 1335, 39 N.W.2d 302, 304, 305, "* * * the employee voluntarily quit during the period for which he was employed and thus forfeited his right to a bonus for such period."

Other precedents which hold, under statutes about like ours or more favorable to claimants, that an employee is disqualified for benefits by leaving his work because of illness or for other personal reason not directly incident to the employment are Henderson v. Department of Industrial Relations, 252 Ala. 239, 40 So.2d 629; West Point Mfg. Co. v. Keith, 35 Ala. App. 414, 47 So.2d 594; Haynes v. Unemployment Compensation Comm., 353 Mo. 540, 183 S.W.2d 77; Woodmen of the World Life Ins. Soc. v. Olsen, 141 Neb. 776, 4 N.W.2d 923 (wife left her work to be with her husband who had been transferred to another city); Sun Shipbuilding & Dry Dock Co. v. Unemployment Compensation Board of Review, 358 Pa. 224, 56 A.2d 254 (claimant left his work to go into business for himself); Stone Mfg. Co. v. South Carolina Employment Sec. Comm., 219 S. C. 239, 64 S.E.2d 644 (claimant left work to be with her husband stationed at a military post); John Morrell & Co. v. Unemployment Compensation Comm., 69 S. D. 618, 13 N.W.2d 498 (pregnancy); Meggs v. Texas Unemployment Compensation Comm., Tex. Civ. App., 234 S.W.2d 453 (claimant left her work to help care for her husband who was in ill health); State v. Hix, 132 W. Va. 516, 54 S.E.2d 198 (which rejects substantially the same contention appellants make here).

In the Nebraska, Pennsylvania, South Carolina, and South Dakota cases just cited the statute disqualified one for benefits merely for leaving work "voluntarily without good cause" without adding "attributable to his employer" or similar words. Each decision holds, however, that at least ordinarily good cause for leaving work must be attributable to the employment. See 81 C. J. S., Social Security and Public Welfare, section 167, page 255.

There are several Pennsylvania Superior Court decisions that good cause for leaving work need not be attributable to the employment. However, as stated, the Pennsylvania statute does not contain these qualifying words. See Ibid., section 167, n.99; annotation 14 A. L. R.2d 1308, 1313. Further, the Pennsylvania Supreme Court in the Sun Shipbuilding & Dry Dock Company case, supra (at page 231 of 358 Pa., page 258 of 56 A.2d) seems to cast doubt on such decisions.

The annotation, supra, in 14 A. L. R.2d 1308, 1311, on the subject "Leaving employment * * * because of sickness or disability, as affecting right to unemployment compensation" says this by way of summary: "The principal difference in the statutes affecting this question appears to be that in some states, no limitation is placed on 'good cause' for quitting, whereas, in other jurisdictions, the 'good cause' must be attributable to the employer or arise in connection with the work."

81 C. J. S., Social Security and Public Welfare, section 167, page 255, just published, states: "Under statutes expressly requiring, as a condition of eligibility for unemployment benefits, that the good cause for leaving one's employment be connected with the worker's employment, the sole test of whether an employee escapes disqualification because of quitting his job is whether he left for a sufficient cause connected with his employment. Accordingly, under such statutes, an employee is disqualified * * * if he has left his work voluntarily without good cause connected with such work * * *."

Appellants argue the effect of the trial court's decision is to read out of section 96.5, paragraph 1, supra, the word "voluntarily" so that any quitting of employment "without good cause attributable to his employer" results in disqualification

for benefits. We think the decision is not subject to such criticism. It is proper that the word "voluntarily" be taken in connection with the phrase just quoted which is explanatory or descriptive of it.

As we have observed and as we held in Moulton v. Iowa Employment Security Comm., supra (at page 1172 of 239 Iowa, page 216 of 34 N.W.2d), if we accept appellants' contention we must read out of the statute the words "attributable to his employer" added by the Forty-eighth General Assembly. We feel the decision we affirm more nearly gives effect to all the words of the statute than does the construction urged by appellants. A fundamental rule of statutory construction is that, if reasonably possible, effect should be given every part of a statute. Chappell v. Board of Directors, 241 Iowa 230, 232, 39 N.W.2d 628, 629, and citations; 50 Am. Jur., Statutes, section 358.

Appellants also contend section 96.5, paragraph 1, should be considered in the light of section 96.2, headed "Guide for interpretation." Of course, in seeking the meaning of 96.5 the entire chapter 96, including section 96.2, should be considered. Iowa Public Service Co. v. Rhode, 230 Iowa 751, 753, 298 N.W. 794, 796; Board of Park Commissioners v. City of Marshalltown, 244 Iowa 844, 851, 58 N.W.2d 394, 398, and citations; John Morrell & Co. v. Unemployment Compensation Comm., 69 S. D. 618, 13 N.W.2d 498, 500; 50 Am. Jur., Statutes, section 352.

We think section 96.2 does not aid appellants. It ends by saying the chapter is enacted "for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

It is argued claimant is not among those "unemployed through no fault of their own." In the sense that she was not blameworthy, culpable or wrong doubtless she was not at fault in connection with her unemployment. However, Moulton v. Iowa Employment Security Comm., supra, 239 Iowa 1161, 1172, 1173, 34 N.W.2d 211, 217, holds the word "fault" as here used is not limited to something worthy of censure but must be construed as meaning failure or volition. Other authority supports this view. See citations in Moulton case; also Stone Mfg. Co.

v. South Carolina Employment Security Comm., supra, 219 S. C. 239, 64 S.E.2d 644, 646; 81 C. J. S., Social Security and Public Welfare, section 161.

Section 96.2 also states that protection against unemployment "can be provided by encouraging employers to provide more stable employment" etc. See in this connection 81 C. J. S., Social Security and Public Welfare, section 77b, page 114. There was no failure of the employer here to provide stable employment. That section 96.2 does not aid appellants see, in addition to the Moulton case, supra: Iowa Public Service Co. v. Rhode, supra, 230 Iowa 751, 298 N.W. 794; White v. Review Board of Indiana Employment Sec. Div., 114 Ind. App. 383, 52 N.E.2d 500, 502; John Morrell & Co. v. Unemployment Compensation Comm., supra, 69 S. D. 618, 13 N.W.2d 498, 500, from which the Moulton case quotes at length (at pages 1166, 1168 of 239 Iowa, pages 214, 215 of 34 N.W.2d).

Finally, appellants argue claimant was not disqualified for benefits under 96.5, paragraph 1, supra, because it is said her work at Wolf's was not suitable in that it injuriously affected her health. We are told that "work" as used in section 96.5, paragraph 1, means "suitable work." Basis for the argument is that paragraph 3 of section 96.5, which specifies "failure to accept work" as another of the six causes of disqualification for benefits, expressly refers to failure, without good cause, "to apply for available, suitable work" and subparagraph a says "In determining whether or not any work is suitable for an individual, the commission shall consider the degree of risk involved to his health * * * his physical fitness * * *."

We deem it unnecessary to determine whether the "work" referred to in 96.5, paragraph 1, is the "suitable work" referred to in 96.5, paragraph 3. These two paragraphs specify entirely separate causes of disqualification for benefits. It is a sufficient answer to this argument that, as we have indicated, it is not shown claimant's employment at Wolf's injuriously affected the condition of health which caused her to move to Arizona. It was the Iowa climate, not her work at Wolf's, that was not suitable for her.

Appellants say in argument "Claimant could not continue in her work at Wolf's or in any work in Des Moines or

Iowa without a dangerous risk to her health." The effect of their argument is that the Iowa climate would afford claimant good cause, under section 96.5, paragraph 1, for leaving any work she might undertake in this state. We are not prepared to so hold.

It is true, as appellants repeatedly remind us, the order of a majority of the commission that claimant was not disqualified for benefits did not mean she was eligible to receive benefits with respect to any week until she was "able to work" and "available for work." See section 96.4, paragraph 3. We do not understand plaintiff disputes this. Plaintiff does argue that being "able to work" and "available for work" in Phoenix would not render her eligible for benefits under section 96.4. It is unnecessary to decide that question.—Affirmed.

All JUSTICES concur.