A. BORCHMAN SONS, APPELLANT, v. BERNARD CARPENTER ET AL., APPELLEES.

COOPER CONSTRUCTION COMPANY, APPELLANT, v. PAUL E. OTTO ET AL., APPELLEES.

PARSONS CONSTRUCTION COMPANY, APPELLANT, v. JOSEPH W. TRIPP ET AL., APPELLEES.

89 N. W. 2d 123

Filed March 28, 1958. Nos. 34332, 34333, 34334.

*King, Haggart & Kennedy,* for appellants.

*David D. Weinberg,* for appellees Carpenter, Otto, and Tripp.

*John E. Sidner,* for appellee Weasmer.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

These appeals involve the construction and application of section 48-628, R. R. S. 1943, of the Employment Security Law. These matters arose, had been determined, and the appeal filed in the district court before the amendment to this section in 1955. The causes were decided in September 1957. Hence we cite the earlier act and call attention to the amendment which is of no effect here.

The claimants here are Mr. Otto, Mr. Carpenter, and Mr. Tripp. They filed claims for benefits under section 48-629, R. R. S. 1943. The claim of Tripp was allowed and those of Carpenter and Otto disallowed.

Appeals were taken in each instance to the appeal tribunal as provided in section 48-634, R. R. S. 1943. The tribunal found all claimants entitled to benefits. Pursuant to section 48-638, R. R. S. 1943, appeals were taken to the district court where the court entered a decree in each case holding that the claimant was eligible to receive the benefits of the act.

Pursuant to section 48-640, R. R. S. 1943, appeals were brought here.

The claims have been kept separate so far as pleadings, records, findings, and decrees are concerned. However, before the tribunal and in the district court the material evidence in each case was stipulated to be the evidence in all three cases, so that for trial purposes the claims were consolidated in fact. It is such a consolidated evidence record that we have here.

Preliminary to a statement of fact and issues, it is necessary that we determine two matters. First. By the provisions of sections 48-639 and 48-640, R. R. S. 1943, of the Employment Security Law, the district court and this court consider the causes de novo upon the record, or "in other words to try the case anew." Beecham v. Falstaff Brewing Corp., 150 Neb. 792, 36 N. W. 2d 233. This means also that it is the duty of this court to "retry the issue or issues of fact involved in the finding or findings of fact complained of" and "reach an independent conclusion" thereon. § 25-1925, R. R. S. 1943.

Second. Section 48-628, R. R. S. 1943, provides: "An individual shall be disqualified for benefits: * * * (d) For any week with respect to which the commissioner finds that his total unemployment is due to stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed; Provided, that this subsection shall

not apply if it is shown to the satisfaction of the commissioner that (1) he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work, and (2) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; * * *."

The issues are submitted here as to whether the claimants, severally, are disqualified to receive the benefits of the act because of the existence as a fact of one or more of the reasons enumerated in the provisos under (1) and (2).

That is not the test.

The disqualification of an employee exists under section 48-628, R. R. S. 1943, when the unemployment is due to a stoppage of work because of a labor dispute as set out in the act. See subsection (d) thereof.

The provisos of section 48-628 (d), R. R. S. 1943, set out the conditions under which the disqualification may be removed.

It necessarily follows that where a disqualification for benefits exists, the burden of proof under section 48-628(d), R. R. S. 1943, of each claimant is to establish that he as an individual was not within any of the alternatives of proviso (1) and that he did not belong to a grade or class of workers within any of the alternatives of proviso (2); or as was said in Auker v. Review Board, Indiana Employment Security Division, 117 Ind. App. 486, 71 N. E. 2d 629, the burden was upon claimants to requalify themselves for benefits by establishing not one, but both of the separate conditions which would requalify them. Lanyon v. Administrator, Unemployment Compensation Act, 139 Conn. 20, 89 A. 2d 558; Martineau v. Director of the Division of Employment Security, 329 Mass. 44, 106 N. E. 2d 420; In re Stevenson, 237 N. C. 528, 75 S. E. 2d 520; Queener v. Magnet Mills, Inc., 179

Tenn. 416, 167 S. W. 2d 1; 81 C. J. S., Social Security and Public Welfare, § 219, p. 315.

The trial court in its decree based its conclusion on a finding that the claimants, severally, were not within the provisos of section 48-628(d), R. R. S. 1943.

The assignments of error are that the decision in each case is contrary to the evidence and contrary to law.

It is not seriously urged here, and could not be on this record, that each claimant's unemployment was not due to a stoppage of work which existed because of a labor dispute on the premises at which he was last employed.

The precise question for decision here, then, is this: Has each of the claimants met his burden of proof so as to remove the disqualification for benefits under the act?

The controlling fact situation here is not in serious dispute.

In the building industry in the Omaha area a number of general contractors had formed an association for the purpose of representing all members in matters of common interest. This association had the power of acting as bargaining representative for all of its members in labor contract matters.

The labor unions engaged in the industry were organized on a craft basis. Each union retained its bargaining power in labor matters so far as contracts were concerned, with the exception of the carpenter's union. Several local unions of carpenters had a council representing them.

However, all of the unions involved had a building trades council for the declared purposes, among others, "to aid each other to secure adequate working hours and a just compensation therefor; * * *," and "The object of this organization shall be to unite the wisdom, interest and experience of the organized building trades, so that they form one compact body, with common interest, to prevent that which may be injurious, and to properly perfect and to carry into effect the principles

agreed to in our Preamble, and to promote that which may be advantageous for the common good of all."

This council was composed of delegates from the various unions, on a membership representative basis, and was supported by dues paid by the constituent unions on a membership basis.

It will then be seen that the contractors and the unions were each in a position to use their combined strength to enforce economic sanctions against the other.

The contractors had labor contracts with the several labor unions, all of which expired on March 31, 1953. Several weeks before that date the contractors association and the building and construction trades council began negotiating on the matter of new contracts. The representatives of the unions were demanding wage increases in all instances and welfare fund increases in some or all instances.

An agreement was not had. The deadline of April 1, 1953, was approaching. It appears that an effort was made through the carpenters council to find a basis for new contracts. The carpenters authorized their representatives to call a strike. On April 1, 1953, the operating engineers called a strike and put out picket lines on those jobs where the larger number of engineers were employed.

Claimant Tripp was a member of the laborers union. Pickets were placed on the job where he was employed shortly before noon on April 1, 1953. Tripp and others left the job and did not return that day or on the succeeding days. There were no picket lines placed on the jobs where claimants Otto and Carpenter, members of the carpenters union, were employed. They worked all day on April 1, 1953. It is stipulated that work on all jobs was suspended on April 2, 1953, by the election of the contractors. The evidence shows without contradiction that although work on these jobs could have progressed for a short time, economy and efficiency required the availability and service of all crafts. It is

also quite apparent that the strike of the operating engineers was the immediate cause of the shutdown.

What happened thereafter is not at all clear in the evidence, save that work was resumed on all projects at least by May 18, 1953.

The question, then, is: Does this evidence show that the claimants have met the burden of proving the removal of the disqualification which is the mandate of the law, save for the exception?

Here we have a situation where all unions, including those to which claimants belong, have a common interest and purpose of securing increased wages and one union strikes and produces the unemployment that is the basis of the claims.

Are the members of the unions that are not striking entitled to the benefits of the act?

We have above set out the burden on the claimants. One of the several tests which the statute requires is that they show they are not "directly interested in the labor dispute which caused the stoppage of work."

Chrysler Corp. v. Smith, 297 Mich. 438, 298 N. W. 87, 135 A. L. R. 900, states the rule as follows: " '* * * a labor dispute that affects the wages, hours of work, and general conditions of employment, causes all employees concerned to be directly interested. This is not a contingent, remote, or speculative interest, but rather must be regarded as directly within the meaning of the statute.' " See, also, Local No. 658 v. Brown Shoe Co., 403 Ill. 484, 87 N. E. 2d 625. The rule applies to members of unions who do not strike (Lanyon v. Administrator, Unemployment Compensation Act, *supra*), and to non-union employees. See Martineau v. Director of the Division of Employment Security, *supra.* There the court held: "The statute, however, does not confine disqualification to those employees who participate in or finance the labor dispute. In addition, it withholds benefits from employees who are 'directly interested in the labor dispute.' * * * a person is 'directly interested' in

a dispute when his wages, hours, or conditions of work will be affected favorably or adversely by the outcome. It is of no consequence that the person is not a member of the union conducting the strike or that he may not be in sympathy with its purposes." See, also, Auker v. Review Board, Indiana Employment Security Division, *supra.*

The claimants having failed to meet their burden of proof in the matter here involved, we need not consider the other elements of the statute which must be met to remove the disqualification of the act. .

The judgment of the trial court is reversed in all three causes and the causes are dismissed.

REVERSED AND DISMISSED.

YEAGER, J., participating on briefs.