ROBERT G. HEIMSOTH, APPELLEE, V.
KELLWOOD COMPANY, APPELLEE, AND
JOHN R. HANLON, COMMISSIONER OF LABOR, APPELLANT.

318 N.W.2d 1

Filed April 2, 1982. No. 44461.

Pamela A. Mattson, for appellant.

Noel S. Dekalb and Marsha E. Fangmeyer, for appellee Heimsoth.

No appearance for appellee Kellwood.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and BRODKEY, J., Retired.

PER CURIAM.

Robert G. Heimsoth, the claimant-appellee herein, filed for unemployment compensation benefits under the Nebraska Employment Security Law. The claims deputy, and on appeal the Nebraska Department of Labor Appeal Tribunal, determined that the claimant voluntarily left his employment as of September 16, 1980, without good cause and disqualified him for unemployment benefits for the week ending September 20, 1980, through November 8, 1980, with a subsequent additional 7-week reduction in maximum benefits if claimant were to file for such benefits after the above period, assuming him to be

otherwise eligible therefor. On appeal to the District Court of Nebraska in and for Jefferson County, Nebraska, the decision of the tribunal was reversed, from which judgment the state Commissioner of Labor now appeals to this court.

The commissioner's various assignments of error can be summarized into a single one, namely, the District Court erred in finding that Heimsoth left his employment voluntarily with good cause for medical reasons. We agree with the commissioner and reverse the judgment of the District Court.

We first address the scope of review in this court, concerning which we have made conflicting statements.

In *A. Borchman Sons v. Carpenter,* 166 Neb. 322, 89 N.W.2d 123 (1958), we held that appeals under the provisions of the Employment Security Law, see Neb. Rev. Stat. §§ 48-638 and 48-639 (Reissue 1978), must be heard by the District Court de novo on the record, although either party may offer additional evidence after proper notice, and that this court also considers such appeals de novo on the record. See, also, *Beecham v. Falstaff Brewing Corporation,* 150 Neb. 792, 36 N.W.2d 233 (1949); *Deshler Broom Factory v. Kinney,* 140 Neb. 889, 2 N.W.2d 332 (1942). In *Glionna v. Chizek,* 204 Neb. 37, 281 N.W.2d 220 (1979), we reaffirmed that standard of review and observed it is our duty to retry the issues of fact involved in the findings complained of and reach an independent conclusion thereof. In *Bristol v. Hanlon,* 210 Neb. 37, 312 N.W.2d 694 (1981), we stated that de novo review in this court is limited to and governed by the standards of the Administrative Procedures Act. However, in *Walker Mfg. Co. v. Pogreba,* 210 Neb. 619, 316 N.W.2d 315 (1982), we reaffirmed that our review is de novo on the record.

The pertinent statute, Neb. Rev. Stat. § 48-640 (Reissue 1978), provides: ''An appeal may be taken from the decision of the district court to the Su-

preme Court of Nebraska in the same manner, but not inconsistent with the provisions of sections 48-601 to 48-668, as is provided in cases arising under the workmen's compensation law." Section 48-639 provides in pertinent part: "In any judicial proceeding under sections 48-638 to 48-640 the court shall consider the matter de novo upon the record. . . ." We conclude that § 48-640 contemplates a de novo review on the record in this court; therefore, our statement in *Bristol v. Hanlon, supra,* that our review in these appeals is limited by the Administrative Procedures Act was incorrect. The scope of review is de novo on the record from the District Court and it is the duty of this court to retry the issues of fact involved in the findings complained of and reach an independent conclusion thereof. To the extent *Bristol v. Hanlon, supra,* is inconsistent with this opinion, it is overruled.

We find that Heimsoth was employed in the shipping department of the Fairbury, Nebraska, division of Kellwood Company on July 9, 1979. Kellwood Company is a manufacturer of coats and other items of wearing apparel. The claimant's duties as a laborer in the Kellwood shipping department included the tagging, packing, bagging, and strapping of the apparel items prior to their shipment by carrier. Heimsoth continued in his duties with Kellwood until January 9, 1980, when he was required to take a medical leave of absence for back surgery. Heimsoth underwent surgery on January 15, 1980, and was hospitalized for approximately 28 days.

During the period of his recovery, Heimsoth sought unemployment benefits. He was contacted by the personnel manager for Kellwood and told his employment would have to be terminated in order for him to qualify for such benefits. The personnel manager indicated that a clerical position was being held open for claimant in the Kellwood shipping office. The duties of a shipping clerk are generally

less physical than those of a shipping laborer and require less standing, pushing of garments, and climbing.

As claimant did not desire to terminate his employment, he obtained a medical release from his physician with the understanding that he would be doing clerical work rather than the physical labor required in the shipping department. Upon the presentation of the medical release, Heimsoth was allowed to return to work at Kellwood. Although the medical release was without restriction, it is clear that Heimsoth had discussed his recent surgery and prior back problems with his supervisors and they agreed to accommodate him as much as possible so that he could work in a seated position. Upon his return to work in June of 1980, Heimsoth was assigned to his former duties as a shipping laborer and provided a piece of board to put across a chair so he could perform such duties while seated. After a period of about 2 months Heimsoth was moved to the shipping office where he worked as a shipping clerk. About a month later he was again assigned the duties of a shipping laborer. He volunteered to work a 12-hour shift, but protested to his supervisor that he had been hired to do clerical work.

The voluntary resignation signed by claimant on September 22, 1980, recited that he terminated for "medical reasons." He testified before the Nebraska Department of Labor Appeal Tribunal that he "knew that if I continued working the type of work that I was being asked to do, that it could eventually create a problem. But there was no problem created as yet." He further testified before the tribunal that he felt fine, that medical reasons were not a major factor in leaving his employment, and that he terminated principally because he did not see a way to work in the shipping office. Before the District Court he testified that his back was "hurting terribly" when he clocked out his last day of work and

that the labor involved caused him physical discomfort.

Neb. Rev. Stat. § 48-628 (Reissue 1978) provides in pertinent part: "An individual shall be disqualified for benefits: (a) For the week in which he has left work voluntarily *without good cause,* if so found by the Commissioner of Labor, and for not less than seven weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner according to the circumstances in each case . . . ." (Emphasis supplied.)

On appeal, the commissioner contends that Heimsoth did not present sufficient evidence to substantiate that he left his employment with good cause. The commissioner contends that the sole reason for Heimsoth's departure from Kellwood Company was his disappointment in not being able "to sit at a desk eight hours a day." We agree.

In *Glionna v. Chizek,* 204 Neb. 37, 40, 281 N.W.2d 220, 223 (1979), this court cited *Fannon v. Federal Cartridge Corp.,* 219 Minn. 306, 18 N.W.2d 249 (1945), which stated: " '* * * where factors or circumstances directly connected with employment result in illness or disease to an employee and make it impossible for him to continue therein because of serious danger to his health, termination of employment for this reason may correctly be said to be involuntary and for "good cause attributable to the employer," even though the employer be free from all negligence or wrongdoing in connection therewith.' " We then found that Glionna's workload, in good faith and through no fault or deficiency on her part, became an increasingly unreasonable burden, as the result of which her health and sense of well-being were affected. We held that under such circumstances her voluntary termination had a justifiably reasonable connection with or relation to the conditions of her employment and therefore was for good cause. The instant matter is not such a case.

We find that although Heimsoth may have anticipated a health problem, none was present to the degree that it was the cause of his voluntary termination. He terminated his employment because he was disgruntled at not being assigned the duties of a shipping clerk. The question therefore becomes whether, under the circumstances of this case, that disappointment constitutes good cause. We find it does not.

Heimsoth was correctly told when he first applied for benefits that he would have to be unemployed in order to qualify. It appears he was not told, however, that he would remain ineligible for unemployment benefits unless, in addition to being unemployed, he was in fact able to and available for work. Neb. Rev. Stat. § 48-627 (Reissue 1978). Nonetheless, the fact remains that Heimsoth did not wish to terminate at that time, he did not terminate, he returned to the job he had before undergoing surgery, and he was able to perform that job without adverse medical consequences. Moreover, Kellwood offered to find other work for Heimsoth, but he elected to quit. Under such circumstances it cannot be said he terminated with good cause. See *White v. Review Board of Indiana, etc.,* 114 Ind. App. 383, 52 N.E.2d 500 (1944), holding that a bandsaw operator who quit work because he was disgruntled by the employer's rule as to docking late employees, wanted a guard on the saw, which was old but not dangerous, replaced, and whom the employer was ready to take back had terminated without good cause.

For the reasons herein stated, the judgment of the District Court is reversed and the determination of the Nebraska Department of Labor Appeal Tribunal reinstated.

REVERSED.

KRIVOSHA, C.J., dissenting.

I find that I must respectfully dissent from that

portion of the majority opinion which finds that the appellee, Robert Heimsoth, left his work voluntarily, without good cause, thereby subjecting himself to the benefit disqualification period specified by statute. I believe that we have improperly analyzed what "good cause" under the Nebraska Employment Security Law means. The issue is not whether the employee had sufficient cause which, absent the statute, might have entitled him to sue for breach of contract but, rather, whether he left his employment without any basis except his own personal desires. The law is clear that what we are concerned with here is not the fault of the employer but, rather, the right of the employee. The employer may be totally without fault. If the employee, however, has "good cause" for leaving, the employee does not thereby become disqualified from receiving unemployment benefits immediately. In the instant case the employee was promised a particular job which, admittedly, he was not given. Medical reasons set aside, when an employee is promised a particular type of job and not given that job, can it be said that his leaving is without "good cause"?

In *Glionna v. Chizek,* 204 Neb. 37, 40, 281 N.W.2d 220, 223 (1979), we said: "[I]f the reason for leaving, voluntarily though it may appear, has some justifiably reasonable connection with or relation to the conditions of employment, it cannot be said that the leaving is 'voluntarily without good cause.' "

As noted by the majority, the commissioner contends that the sole reason for Heimsoth's departure from Kellwood Company was his disappointment in not being able "to sit at a desk eight hours a day." That disappointment arises, however, by reason of a promise made by the employer. It occurs to me that a broken promise is good cause, though it may indeed fall short of a legal cause. I would have found that Heimsoth left his employment for "good

cause" and was therefore entitled to unemployment benefits immediately.

I am authorized to advise that White, J., joins in this dissent.