No. 45,809

RAYMOND ST. AUBYN, by and Through His Mother and Natural Guardian and Next Friend, LA VAUGHN ST. AUBYN PENNINGTON, *Plaintiff*, v. SUSAN BROWNFIELD THOGMARTIN, EDWARD MYER and ALLSTATE INSURANCE COMPANY, *Defendants*,
and
FRANK ENGLER, *Appellee* (Defendant and Third Party Plaintiff), v. PACIFIC INSURANCE COMPANY OF NEW YORK, *Appellant* (Third Party Defendant).

(476 P. 2d 248)

Opinion filed November 7, 1970.

*John Jurcyk*, of McAnany, Van Cleave and Phillips, of Kansas City, argued the cause, and *Willard L. Phillips* of the same firm was with him on the brief for the appellant.

*Charles O. Thomas*, of Weeks, Thomas, Lysaught, Bingham and Johnston, chartered, of Kansas City, argued the cause, and *Leonard O. Thomas* of the same firm was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This appeal involves the duty of a liability insurance carrier to defend, and its liability to pay any judgment rendered against, a particular defendant in an automobile negligence action. The single issue is the applicability of a "fellow employee" exclusionary clause in the carrier's policy.

From an adverse judgment following trial to the court on this limited aspect, the insurance carrier, Pacific Insurance Company of New York, has appealed.

The background of the action will be briefly stated.

Raymond St. Aubyn, a sixteen year old boy, was on October 25, 1966, a regular employee of Edward Myer. Myer was a contract carrier for the Kansas City Star, using a motor vehicle in the daily delivery of newspapers in Kansas City, Kansas. Myer owned the

vehicle and normally drove it along the route while two teen-aged boys threw papers from it. An automobile liability insurance policy issued by Pacific covered the Myer vehicle.

On the day in question Myer had gone on a hunting trip and Frank Engler was driving the vehicle in his stead and at his request in the morning delivery of papers. (Engler's status is the crux of this action, about which more anon). St. Aubyn was in the delivery truck for the purpose of throwing papers. The truck collided with an automobile driven by Susan Brownfield Thogmartin, injuring St. Aubyn as a result.

St. Aubyn commenced this action by filing his petition for damages against Thogmartin, Myer and Engler. Myer and Engler filed separate answers. Thereafter, Engler, through his own automobile liability insurer, commenced a third party proceeding against Pacific. In this third party suit Engler alleged that Pacific under its policy covering the Myer vehicle was obligated to defend him (Engler) and to pay, within policy limits, any judgment obtained against him by St. Aubyn, and Engler sought declaratory judgment for this relief.

In due course Pacific filed an answer asserting its coverage did not extend to appellee Engler by reason of an exclusionary clause in the policy which provided that it was not applicable:

"(f) to bodily injury to any fellow employee of the insured injured in the course of his employment if such injury arises out of the use of an automobile in the business of his employer. . . ."

The trial court heard the third party suit in advance of trial of the negligence action upon its merits. It made findings of fact and conclusions of law favorable to Engler's position, and, as indicated, rendered judgment as requested against Pacific, which has appealed. Engler is the only other party to this appeal, although his own insurance carrier is interested in the outcome.

To clarify and pinpoint the precise issue upon appeal, we may state:

Appellant Pacific concedes appellee Engler is, by definition in its policy, an additional insured therein inasmuch as he was operating the vehicle with Myer's permission. The parties agree St. Aubyn was an employee of Myer and both concede the dispositive factor in this proceeding is whether appellee was an employee of Myer at the time in question. As the issue is submitted to us, if appellee was not an employee of Myer, appellee has insurance

protection as an alleged tortfeasor by reason of being an additional although unnamed insured; if appellee was an employee of Myer, appellee has no coverage where another employee of Myer is seeking judgment. (The policy also contains an "employee" exclusionary clause which is of no present concern.)

The evidence at trial upon appellee's status in its most favorable aspect toward him as the prevailing party revealed the following:

Appellee formerly was a contract carrier for the Kansas City Star but had retired several years prior to October 25, 1966. He and Myer had been friends, and he had, prior to the occasion in question, driven Myer's route for him an average of two or three times a year. When he had done this there had never been any agreement for compensation. Sometimes Myer would give appellee varying amounts for taking the route but always what he (Myer) wanted to; upon occasion Myer gave appellee no payment at all; sometimes appellee would give back all or some of the money given him by Myer. When Myer asked appellee to take his route for him on October 25, 1966, so that he could go hunting, there was no talk or suggestion of pay. Subsequently Myer did give appellee $5.00 for driving the route on that day. While appellee was driving the route the two boys who were throwing papers told appellee where to drive as he was not acquainted with the route. In the summer of 1968 Myer took ten days off from his work and he had another driver take his place on the route; He paid that relief driver $100.

When asked how he would characterize his friendship with appellee Myer testified:

"I would say very close; I'd help him whenever I could and he helps me whenever he can, and it's a mutual friendship, no business friendship."

Appellee gave the following testimony:

"Q. All right. Now, if there wasn't any understanding as to salary, why would you do this for Mr. Myer?

"A. As a favor.

"Q. As a favor. And had you done this for him in the past?

"A. I have, yes.

"Q. Approximately how often do you do this favor for him?

"A. Oh, maybe twice a year, somewhere in that neighborhood, if I am free.

"Q. And when you have driven the truck for him on these prior occasions, was there ever any talk or discussion about any money to be paid to you for this?

"A. None whatsoever.

"Q. Now, you have been present during Mr. Myer's testimony, and he stated that he gave you a certain amount of money after you have completed—

"A. I have refused it from him sometimes and haven't even taken it. I didn't do it for what I would get out of it, I done it for a favor to Mr. Myer.

"Q. In other words, sometimes he gave you a little money and sometimes he didn't give you any?

"A. That's right.

"Q. All right, and you did this—

"A. Sometimes he insisted, in other words, that I take something for it and I would say, 'O.K., if that's the way you feel about it.'

.    .    .    .    .    .    .    .    .    .    .    .

"A. Well, I know that as far as him requesting me, he never requested me, he asked me and I volunteered to do it.

"Q. You volunteered?

"A. But under no pay."

The trial court, in rendering judgment for appellee, made the following findings of fact and conclusions of law:

"3. That at the time and place of the accident on October 25, 1966, Edward Myer was a contract carrier for The Kansas City Star and was required to deliver a morning and evening newspaper. Engler had volunteered to drive the vehicle for his friend Myer on the day in question. There was no agreement for payment of compensation to Engler. Engler could have reneged on his offer to drive or he could have quit halfway through the route on the day in question and Myer would have had no recourse against him. Engler didn't know the route. He was merely driving the delivery vehicle and following a route as given him by St. Aubyn and Hood. St. Aubyn and Hood were throwing the papers and directing Engler where to drive. Subsequently, Myer paid Engler $5.00 for the trip of October 25th. This was a gratuity.

.    .    .    .    .    .    .    .    .    .    .    .

"1. That at the time of the accident described in the plaintiff's petition, Frank Engler was not an employee of Edward Myer nor a co-employee of Raymond St. Aubyn."

Appellant valiantly urges insufficiency of the evidence to support the trial court's finding and conclusion that appellee was not an employee of Myer. It stresses many factors which it asserts established the contrary—ownership of the vehicle; that appellee was at Myer's request furthering the latter's business at the time; Myer's implicit retention of the right of control over appellee in the handling of the vehicle, which right was actually exercised when Myer's other employees, the boys throwing papers, told appellee the exact route to follow. It asserts absence of agreement as to any amount of compensation is immaterial and likewise the length of employment.

Much of appellant's argument is cast in terms of whether ap-

pellee's role was that of employee or independent contractor—indicia of each vis-a-vis the other are emphasized. Much of its cited authority deals with the applicability of either the workmen's compensation act as an exclusive remedy for personal injury or of the Fair Labor Standards Act but our problem here is not to determine whether a person falls within a definition in a statute enacted for a particular purpose and pertinent to a special situation. Moreover, the trial court did not find, and there is no contention here, that appellee was an independent contractor. The court found appellee had "volunteered" to drive the vehicle without any agreement for compensation and that the subsequent payment of $5.00 was a gratuity.

We are not without precedent on the subject. In *Bean v. Gibbens*, 175 Kan. 639, 265 P. 2d 1023, the question was whether a deceased boy was an employee of an insured within the meaning of a liability insurance policy excluding employees from coverage. The boy was helping his father when the insured came along and asked the boy if he would drive a truck to town for him. Nothing was said about any pay. No pay was offered him. There was no understanding on the part of the father there would be any pay. The boy was killed while guiding the truck as it was being towed. It was undisputed that the insured had instructed the boy how to manage the truck and the trial court so found. The trial court also found:

"The task performed by said Wilbur Leroy Bean for defendant was occasional, incidental, casual and a neighborly act." (p. 640.)

It concluded as a matter of law the boy was not an employee within the meaning of the exclusionary clause. Upon appeal the insurer argued that since the insured had the right of control and did in fact exercise it, the boy had to be his employee as a matter of law.

This court stated that whether a person was an employee of an insured within the meaning of a policy exclusionary clause is a question to be decided from consideration of all the surrounding facts and circumstances. After examining various definitions of the term "employee", and other authority, the court rejected the contention of the insurer and held the finding made by the trial court as to the nature of the task rendered the exclusionary clause inapplicable.

In 12 Couch on Insurance 2d, § 45.610, under the general heading of risks covered by automobile liability insurance contracts, the principle is stated thus:

"A person is not an employee by virtue of the fact that he does work or performs services for another when he does so merely as a favor for such other person. . . ." (p. 560.)

Supporting cases may be found in the cited work. See, also, anno. 50 A. L. R. 2d 78, and Later Case Service, Vol. 49-55, A. L. R. 2d § 3.

In the case at bar there is substantial support in the testimony for the proposition that appellee was, as he had done in the past, doing the work as a favor for an old friend. This being true we cannot disturb the finding and conclusion of the trial court.

The judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.