363 F.Supp. 795 (1973)
RANGER INSURANCE COMPANY, Plaintiff,
v.
MERCANTILE TRUST COMPANY
and
Ann B. Koenig, as Executors of the Estate of Victor J. Koenig, Deceased, Defendants.
No. 72 C 558(3).
United States District Court, E. D. Missouri, E. D.
August 9, 1973.
*796 Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for plaintiff.
Hullverson, Hullverson & Frank, St. Louis, Mo., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
WEBSTER, District Judge.
In this diversity action for a declaratory judgment, plaintiff Ranger Insurance Company seeks to be absolved from any liability as an insurer on account of the death of Coleen Loafman, who was killed when an airplane piloted by plaintiff's insured, Victor J. Koenig, crashed in the area of St. Louis, Missouri. Koenig was also killed in the crash. Ranger is presently defending, under a reservation of rights, a wrongful death action against Koenig's estate brought by the husband of Coleen Loafman in the Circuit Court of St. Louis.
Ranger's policy afforded protection to Victor J. Koenig and Koenig Chevrolet Company, as named insureds, from liability *797 and legal defense for which either should become obligated because of an accident, including death, arising out of "the ownership, maintenance, or use" of this aircraft. The policy, however, contained an exclusion clause which Ranger contends is applicable to the facts in this case. The exclusion states:
"This policy does not apply:
* * * * * *
"5. under Coverages A, B or D to bodily injury, to sickness, disease or death of any employee of the Insured while engaged in the duties of his employment or to any obligation for which the Insured or any Company as his Insuror may be held liable under any Workmen's Compensation Law."
Ranger contends that Mrs. Loafman was an employee of either or both insureds and was engaged in the duties of her employment at the time of her death.

Facts
The facts are simple and present no serious conflict. The airplane involved crashed in St. Louis County, Missouri, about 7 p. m. Sunday evening, December 26, 1971. Victor J. Koenig and Coleen Loafman were both killed in the crash. It is clear Mr. Koenig was pilot and Mrs. Loafman was the only passenger.
The airplane was owned and maintained by Koenig Chevrolet Company, a Missouri corporation engaged in the automobile retail and leasing business. It was apparently flown only by Mr. Koenig, who was President of the company. Of the 300 issued and outstanding shares of the company, Victor J. Koenig owned 298 shares. One share was issued in the name of his wife, Ann B. Koenig, who was not active in the business and the other share was in the name of an attorney. Victor Koenig used the plane for company business and also for personal use.
Mrs. Loafman, age 36, began working for Koenig Chevrolet Company September 8, 1969 for $600 a month and was earning $700 a month at the time of the accident. She was Assistant Secretary of the company and Office Manager, supervising six to eight girls. She had a high school education and a knowledge of bookkeeping and had previously worked for a Ford Agency in Poplar Bluff, Missouri. She worked 5 days a week and occasionally half days on Saturday. The company was closed on Sundays. No evidence indicates she worked at home or other than during company hours at the company offices. The Koenigs knew the Loafmans socially and had entertained them in their home.
In October or November of 1971, Victor J. Koenig contacted an auto dealer named Otto Peterson with respect to the possible purchase of his Peterson Chevrolet Company, located in Kirksville, Missouri. Mr. Koenig intended to purchase this business by the formation of a new corporation which would be managed by Charles Uhlig, who was Mr. Koenig's son-in-law, and a then sales manager of the Koenig Chevrolet Company.
Thereafter Mr. Koenig flew to Kirksville in the company plane and met with Mr. Peterson about six times, and conducted negotiations with Peterson concerning the purchase of this business. On several of these trips Mr. Koenig also met separately with a Mr. Vernon Searcy who owned the land on which the Peterson Chevrolet Company was located. Mr. Koenig negotiated with him concerning a lease for this property. These negotiations were handled primarily by Mr. Koenig, although Charles Uhlig did accompany Mr. Koenig one time on one of his airplane trips to Kirksville. Uhlig sat in on a conference with both Mr. Peterson and Mr. Searcy. Mr. Uhlig also drove to Kirksville with his wife and looked over the town.
It was contemplated that the new agency would be called the Chuck Uhlig Chevrolet Company, and on December 26, 1971, Articles of Incorporation had been prepared to incorporate the company. However, the company was not in fact incorporated. The company was to be capitalized on the basis of Victor J. Koenig investing $80,000.00 and Chuck *798 Uhlig the sum of $35,000.00. The proposed Articles provided that Victor J. Koenig was to own nine shares and Chuck Uhlig three shares of the company's capital stock. The authorized capital stock was to be $140,000.00 of $100.00 par value stock. A proposed Stock Retirement Agreement showed that Mr. Koenig would own 800 shares and Charles Uhlig 350 shares. While a draft of a Stock Purchase Agreement provided that Charles Uhlig would hold 350 shares and Victor J. Koenig 1050, a pro forma Corporation Financial Structure sheet showed that $25,000.00 of Mr. Koenig's investment would be in the form of a loan. It was contemplated that Uhlig would purchase control of this company from Mr. Koenig over a five year period.
There was a proposed Agreement of Sale between Victor J. Koenig and Chuck Uhlig as "Buyers", and Peterson Chevrolet Company as "Seller", which writing had been prepared and delivered to Mr. Peterson. While the contract was not signed, Mr. Peterson was in agreement with its terms. Letters dated December 24, 1971 were sent to the creditors of Peterson Chevrolet Company advising them of the proposed transaction. Two drafts of a lease between the proposed new corporation and Mr. Searcy had been prepared and submitted to him. On December 26, 1971 there was one unsettled matter between Mr. Koenig and Mr. Searcy in that Mr. Searcy wanted Mr. Koenig's personal guaranty on the lease. The above mentioned documents were all prepared by a St. Louis County attorney, hired by Mr. Koenig, but who did not represent Koenig Chevrolet.
In addition, an Applicant's Source of Funds Statement had been submitted to General Motors. The signature of Charles Uhlig on this document was witnessed by Coleen Loafman.
There was no connection between Koenig Chevrolet Company and Peterson Chevrolet Company, and the former had no interest of any kind in the latter. Each was an unrelated company, each a separate entity. Koenig Chevrolet Company has no records relating to Peterson Chevrolet Company nor any records showing or relating to any contemplated purchase by Victor J. Koenig and Chuck Uhlig. General Motors policy does not permit one agency to own or operate another.
None of these transactions were connected with or involved Koenig Chevrolet Company. Both Mr. Peterson and Mr. Searcy knew this fact and knew they would be selling and leasing to the Chuck Uhlig Chevrolet Company and not to Victor J. Koenig or Koenig Chevrolet Company.
On December 25, 1971, Mr. Koenig called Mr. Peterson and advised him that he was bringing his business manager to look over the books and records of Peterson Chevrolet Company. Such an examination is normal business practice in purchasing a going business. Mr. Peterson had previously given Mr. Koenig a profit and loss statement of his company, but no accountant or other accounting personnel had been used or employed by either Mr. Koenig or Mr. Uhlig to assist them on this transaction. There had been no prior examination of Peterson's books.
The trip was scheduled for the 26th, which was a Sunday. This was because Mr. Koenig had an appointment with a banker in Kirksville on Monday, the 27th. In fact, it was contemplated that the transaction would be closed on the 27th and the new agency would be opened on January 4.
On Friday, December 24th, Mrs. Loafman went with her husband to visit her sister in Memphis, where they were spending Christmas. Mr. Koenig telephoned Mrs. Loafman at Memphis on the 25th and requested her to accompany him to Kirksville for the purpose of going over the books and records of Peterson Chevrolet Company on Sunday the 26th. Her husband was to return to St. Louis in their automobile, and it was contemplated that Mr. Koenig would return Mrs. Loafman to St. Louis in the *799 airplane. Mr. Koenig picked up Mrs. Loafman in Memphis and he then flew the plane with Mrs. Loafman to Kirksville, where they arrived about 2:20 p. m. and were met by Mr. Peterson.
Mrs. Loafman and the business manager of Peterson Chevrolet Company (who was there at the request of Mr. Peterson) spent about two and a half hours going over the books and records of Peterson Chevrolet Company. While she was doing this, Mr. Koenig was discussing details of the business with Peterson's sales manager.
Mr. Koenig and Mrs. Loafman left Kirksville about 5:55 p. m., and as previously stated, were killed en route to St. Louis and in the vicinity of the St. Louis area on December 26, 1971.
After this occurrence Mr. Uhlig cancelled the Peterson negotiations and wrote him to that effect on January 10, 1972, and thereafter in April of 1972, Mr. Peterson sold his business to someone else. In June, 1972, the Koenig Chevrolet Company was sold and the company is now in liquidation.
No evidence indicated a discussion regarding payment to Mrs. Loafman for the trip or that any payment was to be made or contemplated. Evidence offered by Ranger would indicate no payment was to be made to her by anyone. Koenig Chevrolet Company records show no payment for this trip nor reveal any records relating to the trip at all.
Following Mrs. Loafman's death, a "Report of Injury" was filed with the Missouri Division of Workmen's Compensation. It listed Mrs. Loafman's employer as "Koenig Chevrolet Company" and described how the injury occurred, as follows:
"Passenger in Company airplane which crashed on landing at Spirit of St. Louis Airport. Was on company business at time of death."
It was signed "Lorraine Birmingham, Office Manager".
Mrs. Birmingham was employed by Koenig Chevrolet Company to replace Mrs. Loafman on December 29, 1971. She filed the report as routine and based it on newspaper accounts of the occurrence. She had no personal or other knowledge as to any details surrounding the occurrence. She left entry #13 of the form blank intentionally, not knowing if it were an "injury under the law". She sought no legal or other advice in connection with the form but filled and filed it on her own.
No claim for benefits under the Workmen's Compensation Act, as distinguished from a report of injury, was ever filed by anyone. Neither a workmen's compensation claim nor report has ever been filed against Victor J. Koenig, individually, or his estate.
Carson Loafman, the husband of Coleen Loafman, has brought an action in the Circuit Court of the City of St. Louis for damages against the Estate of Victor J. Koenig. In this suit, the plaintiff seeks damages in the sum of $50,000.00, based upon the claim that Coleen Loafman, who was a passenger in the aircraft, was killed as the result of the alleged negligence of Victor J. Koenig, who was the pilot of the aircraft.
Under Coverage D and the Declarations of the above mentioned aircraft insurance policy, it is provided that plaintiff will "pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, . . . including death at any time resulting therefrom, sustained by any person", including passengers, "caused by an occurrence and arising out of the . . . use of the aircraft." The policy specified certain exclusions, one of which was previously quoted and bears repetition here as follows:
"This policy does not apply:
* * * * * *
"5. under Coverages A, B or D to bodily injury, to sickness or death of any employee of the Insured while engaged in the duties of his employment or to any obligation to which the Insured or any Company as his Insuror may be *800 held liable under any Workmen's Compensation Law."
On June 28, 1972, the attorneys for the Estate of Victor J. Koenig, Stolar, Heitzmann and Eder, requested that Ranger Insurance Company undertake the defense of this action under the aircraft policy insuring Victor J. Koenig. On July 11, 1972, Robert S. Allen, attorney for Ranger Insurance Company, wrote Mr. Alfred O. Heitzmann that he would undertake the defense of the case but reserved the right to contest coverage on the grounds that Exclusion 5 relieved the insurer of liability in this case. On September 14, 1972, this Declaratory Judgment suit was filed.

Conclusions of Law
The court has jurisdiction of this cause under 28 U.S.C.A. § 1332. The amount in controversy exceeds the sum of $10,000.00, exclusive of interest and costs, and there is diversity of citizenship.
A declaratory judgment may be properly made in this case pursuant to 28 U. S.C.A. § 2201 for the purpose of determining a question of actual controversy between the parties. Rule 57, Fed.R. Civ.P.; Universal Underwriters Insurance Co. v. Wagner, 367 F.2d 866 (8th Cir. 1966).
Under Missouri law, the duty of a liability insurer to defend pursuant to its agreement is ordinarily determined by comparing the language of the insurance contract and the allegations of the petition or complaint in the action brought by the person injured or damaged against the insured. Zipkin v. Freeman, 436 S.W.2d 753, 754 (Mo. 1968); Northwestern Mutual Insurance Company v. Haglund, 387 S.W.2d 230, 233 (Mo.App.1965); Aetna Casualty and Surety Company v. Hase, 390 F.2d 151, 153 (8th Cir. 1968). Courts have generally placed the burden of uncertainty as to a policy's coverage on the insurer. Where the allegations of a plaintiff's complaint, albeit ambiguous, state a claim which is potentially or arguably within the policy's coverage, the insurer must accept defense of the claim. Babcock & Wilcox Company v. Parsons Corporation, 430 F.2d 531, 536 (8th Cir. 1970); see generally 50 A.L. R.2d 458, 504 (1956); 7A Appleman, Insurance Law and Practice § 4683, at 439-40 (1962). The court finds that plaintiff was obligated under the terms of the insurance contract to defend the action brought by Carson Loafman.
The policy exclusion relates to two possible situations applicable to any insured:
(1) The insurance does not apply if the injury occurs while engaged in the duties of his employment; and
(2) The insurance does not apply if the insured or any company acting as insurer may be held liable under any workmen's compensation law.
These tests may be examined separately as to each of the two named insureds: Victor J. Koenig and Koenig Chevrolet.

Victor J. Koenig.
1. There was no evidence from which the court could conclude that Coleen Loafman was, at the time of her death, "engaged in the duties of her employment" with Victor J. Koenig. The evidence is entirely to the contrary. At no time was there any employment relationship at all, nor had there ever been. No compensation had been paid by Koenig personally and there was no evidence that any had been promised. The fact that Koenig imposed upon a trusted employee of the corporation which he headed to assist him over a holiday in acquiring a business which would have no connection at all with Koenig Chevrolet does not, without more, make Mrs. Loafman his employee or create for her any "duties of employment" to Koenig personally. The airplane owned by the corporation did not cease to be owned by the corporation because Koenig used it for a personal purpose. Likewise, Mrs. Loafman did not become his employee simply because he borrowed her as well. *801 The performance of a favor for another does not make one his employee. See Couch on Insurance 2d, § 45.610, and cases cited therein.
2. There is no evidence before this court that Victor Koenig or any insurer of his could be liable for Workmen's Compensation under the applicable Missouri law. Section 287.090, R.S.Mo.1969, V.A.M.S., requires that an employer have at least seven regularly employed employees before he can be liable under Missouri Workmen's Compensation statutes. There is no evidence that Koenig had any employees on his personal payroll or that he had ever waived this requirement. And, on the facts of this case, the relationship was at best casual, and certainly not regular.

Koenig Chevrolet.
1. There is no evidence that Coleen Loafman, at the time of her death, was "engaged in the duties of her employment" with Koenig Chevrolet. The trip occurred on a holiday. It was for a purpose in which Koenig Chevrolet had no interest, financial or otherwise. The use (or misuse) of company equipment and facilities by Koenig could not serve to make the trip one which fell within the duties of Coleen Loafman's employment. There is no evidence that she so understood or regarded it, and cases cited by plaintiff in support of Workmen's Compensation coverage are thereby readily distinguished. Under Missouri law, policy provisions designed to cut down, restrict or limit insurance already granted or introducing exceptions or exemptions must be strictly construed against the insurer. McMichael v. American Ins. Co., 351 F.2d 665, 669 (8th Cir. 1965); Aetna Casualty & Surety Co. v. Haas, 422 S.W.2d 316 (Mo.1968). Plaintiff, by bringing this declaratory action, assumed that burden, and unless it meets it, it is not entitled to the declaratory relief it seeks.
2. To sustain a finding that a person injured was covered under the Missouri Workmen's Compensation Act, it is necessary to prove that the injury (or death) both arose out of and was in the course of the employment. Proof of each is essential. R.S.Mo.1969, § 287.120(1), V.A.M.S. Fingers v. Mount, 439 S.W.2d 241, 243 (Mo.App.1969); Vickery v. ACF Industries, 454 S.W.2d 620, 622 (Mo.App.1970). Even if it is assumed that Koenig's control as owner of Koenig Chevrolet compelled Mrs. Loafman's compliance with his request for personal assistance, only the first requirementthat the injury arise out of the employmentwould be met. The trip was not in the course of her employment in terms of the time, place and circumstances of the accident. See Kammeyer v. Board of Education, 393 S.W.2d 122, 127-28 (Mo.App.1965). An accident is said to have arisen in the course of the employment where it occurs (a) within the period of the employment; (b) at a place where an employee might reasonably be; and (c) while the employee is reasonably fulfilling the duties of his employment or is engaged in some task incidental thereto. Fingers v. Mount, supra, 439 S.W.2d at 243. It is the opinion of this court that those requirements have not been shown in this case by a preponderance of the credible evidence.
Nor does the evidence that an employee of Koenig Chevrolet routinely filed a workmen's compensation report bind Mrs. Loafman or anyone claiming under her on the legal issues presented by this action.
The acceptance by Carson P. Loafman of funeral expense benefits erroneously paid by the insurance carrier on the basis of the company report likewise does not control the conclusions of this court.
At the time of her death, Coleen Loafman was not engaged in the duties of her employment with Koenig Chevrolet Company, nor did her death arise out of or in the course of her employment with Koenig Chevrolet Company within the meaning of exclusion clause 5 of the insurance policy number AC A1-158754.816. Fingers v. Mount, 439 S.W.2d 241; *802 Mo.Rev.Statutes 287.020(6); Lawrence v. William Gebhardt Jr. & Son, 311 S.W. 2d 97 (Mo.App.1958); St. Aubyn v. Thogmartin, 206 Kan. 62, 476 P.2d 248 (1970); United Services Automobile Association v. Pinkard, 356 F.2d 35 (4th Cir. 1965).
Ranger Insurance Company is therefore liable under the policy for any claims arising out of the death of Coleen Loafman for which the estate of Victor J. Koenig may be liable to the extent of the policy limits and is obligated to defend the estate in an action brought by Carson P. Loafman for the death of Coleen Loafman in the Circuit Court of the City of St. Louis.
The foregoing constitutes the court's findings of fact and conclusions of law. Judgment will be entered in accordance therewith.
So ordered.