[No. 28380. *En Banc.* May 5, 1942.]

SOUND CITIES GAS & OIL COMPANY, INC., *Respondent,*
v. FRANK RYAN, *as Supervisor of Unemployment
Compensation, et al., Appellants.*[1]

[1]Reported in 125 P. (2d) 246.

458

*The Attorney General* and *William J. Millard, Jr., Assistant,* for appellants.

*Little, Leader, Le Sourd & Palmer,* for respondent.

*Peyser & Bailey* and *John D. Cartano, amici curiae.*

SIMPSON, J.—This action was instituted to secure a refund of unemployment compensation taxes paid to the state for the years 1937 and 1938 on commissions of salesmen selling the capital stock of plaintiff corporation.

It was alleged in the complaint that certain payments of taxes for unemployment compensation had been paid to the state of Washington upon commissions paid to the salesmen who were selling stock of the corporation; that other taxes, yet unpaid, had been assessed for the same purpose; that the tax was illegally collected and assessed for the reason that the salesmen were not employees of plaintiff corporation.

It was further alleged that, on or about March 22, 1940, there was a hearing before the commissioner of unemployment compensation to determine whether the salesmen were employees or independent contractors, and that, as a result of the hearing, the commissioner made findings of fact and a written decision that the salesmen were employees of plaintiff corporation.

The amended answer and cross-complaint filed by defendant alleged that certain allowances for benefits had been made to salesmen who were working for the plaintiff corporation; that the plaintiff had been advised of the determination and allowance; that no

request for rehearing or protest was ever filed; and that plaintiff was thereby precluded from raising any question as to the status of the salesmen and paying to them the benefits.

The case was tried to the court and a judgment entered which determined that plaintiff should recover a refund of all money paid on account of unemployment compensation taxes for the years 1937 and 1938, except the amounts which had been paid to the salesmen on account of their unemployment, and that the unpaid charges should be canceled. The state has appealed.

Appellant makes the following assignments of error: That the court erred in substituting its discretion for that of the commissioner of unemployment compensation and placement, in holding the stock salesmen of respondent to be independent contractors, in holding that the former administrative determination was not *res judicata* of the question of the status of respondent's stock salesmen, and in entering judgment for plaintiff.

The facts are: Respondent corporation is engaged in conducting drilling operations for the discovery of gas and oil. It is also extensively engaged in selling to the public shares of its capital stock for the purpose of raising funds to finance its operations. It employs a large number of salesmen to sell its stock, and these salesmen work upon a commission basis.

March 22, 1940, a hearing was had before Frank Ryan, supervisor of the division of unemployment compensation, the purpose of which was to ascertain whether or not respondent's salesmen were employees or independent contractors, and to have refunded the payments already made.

Testimony taken at the hearing developed the following facts: No written contract is entered into be-

tween respondent and its salesmen. The prospective salesman fills out an application containing his name, address, experience, and references, and then makes application to the state department of licenses for an agent's license for which he pays a five dollar fee. He also pays the cost of renewal. The application form, prescribed by the state department of licenses, requires an endorsement by respondent appointing the salesman as its agent to represent and act for it in negotiating for the sale of the stock. The salesman is then given a letter by respondent showing he has a state license.

When the salesman starts work, he is furnished with information concerning respondent's business which will enable him to inform prospective purchasers of the stock. The information consists principally of a prospectus of the company and other printed items contained in a kit given to each salesman. The salesman operates entirely on his own capital. He is told that there is only one rule and that is to tell the truth and follow the prospectus of the company, and that the stock is a speculation and not an investment.

There is no definite period of employment and the relationship may be terminated at any time. No requirement of any particular volume of sales is made in order for the salesman to remain as an agent of the company, or that the salesman shall devote all or any portion of his time to the business of selling stock. The salesman may sell stock any place in the state of Washington, but may not sell outside of the limits of the state, nor is he allowed to make sales through the mail. Once each week a meeting is held at the office of the company to which the salesmen are asked, but not required, to attend. About twenty-five per cent of the salesmen attend the meetings.

Orders for stock are taken on subscription blanks furnished by respondent. The subscriptions are not valid until accepted by some officer of respondent. The salesman is paid strictly on a commission basis of twenty per cent of the money actually received by the respondent from his sales of respondent's stock. He has no drawing account and must pay all of his own expenses. Respondent furnishes blank business cards to the salesman, but he must place his own name thereon. He is only permitted to use the company's telephone for local calls.

If the salesmen employ others to work for them, respondent is not notified or informed of that fact. When prospects come into respondent's office desiring to buy stock, and they have not been brought in by a salesman for that purpose, they are sold the stock by regular employees of respondent.

Based upon the facts which we have just related, the supervisor made the following findings of fact and conclusion, and recommended their adoption by the commissioner:

"FINDINGS OF FACT

"(1) Sound Cities Gas & Oil Company, Inc., is a corporation organized and operating in the State of Washington for the purpose of locating and developing oil or gas-producing wells and in selling stock to finance these operations.

"(2) Various individuals are engaged by the Company for the purpose of selling its stock. These salesmen have no written contract with the company. The salesmen are licensed by the State of Washington to sell stock and their only activity by which a *livli*hood is produced is the selling of this stock. The activities of these salesmen are restricted to the State of Washington.

"(3) The salesmen attend sales meetings held by the Company at which they receive instructions and information as members of an organized selling force.

These sales meetings are presided over by the manager of the Company. The salesmen are furnished kits and all information necessary for completing sales for the Company. The general manager of the Company hires all salesmen. The salesmen are granted authority by the State of Washington to sell stock. This authority is retained by the Company which in turn issues a letter of authorization to the salesmen verifying the fact that the salesmen have been licensed to sell stock for the Sound Cities Gas & Oil Company.

"(4) The salesmen are not registered with the State Tax Commission as being in business. The salesmen do not pay a business and occupational tax. All monies collected by the salesmen must be turned in to the Company.

"(5) The salesmen are not free from control of the Sound Cities Gas & Oil Company in several important details of their work. The salesmen must limit their sales talks within the provisions of the prospectus prepared by the Company. The salesmen cannot negotiate any sales by mail, a restriction laid down by the Company. The salesmen cannot negotiate any sales outside the State of Washington. The salesmen are instructed by the Company that purchase of the stock is a speculation and not an investment.

"(6) The salesmen carry on the business of the Sound Cities Gas & Oil Company. The salesmen are bonded by the Company. They conduct this business in the office of the Company and use facilities in that office for the purpose of promoting its business. The salesmen have no place of business of their own. They are not required to make any investment in the Company or to have any capital at the time they begin selling stock for the Company. The salesmen are not allowed to put out any advertising in writing of their own but must use the Company's literature entirely.

"(7) All business transacted by the salesmen can be accomplished only on forms furnished by the Company. The salesmen cannot vary any terms of this contract, a definite rule established by the Company. In negotiating the sale of stock all checks received by the salesmen are made out to the Sound Cities Gas & Oil Company and not to the salesmen.

"(8) The salesmen are required to fill out application blanks before going to work for the Company. The salesmen may terminate their relationship with the Company at any time without notice or without any formality. The Company may terminate the contract with any agent at any time with or without cause. No notice need be given the salesmen as the Company retains the right to take away the order book which amounts to a summary dismissal.

"(9) A salesman may be engaged by the Company as a part-time salesman. The other business engaged in by a part-time salesman is not within the scope of his services which he performs for this Company. The salesmen engaged to sell stock for Sound Cities Gas & Oil Company cannot engage in a similar line of work for any other company.

"CONCLUSION

"In view of the foregoing findings of fact, after a full and fair hearing in the premises as aforesaid, I, therefore, conclude and find that the services performed by the salesmen of the Sound Cities Gas & Oil Company, Inc., for remuneration in this state are included in the term 'employment' and are subject to all provisions of the Washington Unemployment Compensation Act."

Thereafter, April 13, 1940, the commissioner of unemployment compensation and placement adopted the findings of fact and conclusion, as reported by the supervisor.

At the trial in the superior court, respondent introduced the above findings and conclusion, and rested. The state, then, introduced evidence to show that three of the respondent's salesmen had been awarded unemployment compensation. An offer on the part of respondent to introduce evidence tending to show that the salesmen were not employees was denied by the court.

Some question arose as to whether the action was one to recover a tax or a proceeding in certiorari

to review the action of the commissioner in refusing to refund a tax, as provided by Rem. Rev. Stat. (Sup.), § 9998-114 (d) [P. C. § 6233-309]. It will be noted that the statute did not provide an appeal from the decision of a commissioner when the application was made for the refund of a tax. The form of the action is immaterial, in so far as this action is concerned, for the reason that the case must be determined upon the testimony produced at the hearing before the supervisor and introduced in evidence by respondent.

The sole question is whether the salesmen were employees, within the meaning of our unemployment compensation act, Laws of 1937, chapter 162, p. 574 (Rem. Rev. Stat. (Sup.), § 9998-101 [P. C. § 6233-301] et seq.). An examination of the facts, as disclosed by the record, convinces us that the findings of the commissioner had sufficient evidentiary support.

The remaining question is whether the commissioner properly applied the law in holding that the salesmen were employees, within the meaning of the act.

Respondent contends that its salesmen were independent contractors, and, as such, were excluded from the provisions of the act, citing *Washington Recorder Pub. Co. v. Ernst,* 199 Wash. 176, 91 P. (2d) 718, 124 A. L. R. 667, as authority for its contention.

The portion of the statute under consideration, Rem. Rev. Stat. (Sup.), § 9998-119 [P. C. § 6233-317] (g) (5) (i) (ii) (iii), has been interpreted by this court in the following cases: *McDermott v. State,* 196 Wash. 261, 82 P. (2d) 568; *Washington Recorder Pub. Co. v. Ernst, supra; Mulhausen v. Bates,* 9 Wn. (2d) 264, 114 P. (2d) 995; *Virginia Mason Hospital Ass'n v. Larson,* 9 Wn. (2d) 284, 114 P. (2d) 976; *In re Farwest Taxi Service, Inc.,* 9 Wn. (2d) 134, 114 P. (2d) 164; *In re Foy,* 10 Wn. (2d) 317, 116 P. (2d) 545.

The opinions of this court, just cited, with the

exception of *Washington Recorder Pub. Co. v. Ernst, supra,* commit this court to the view that our unemployment compensation act, which is similar to those of the majority of the states where this form of social security obtains, does not confine taxable employment to the relation of master and servant. If the common-law relationship of master and servant was to obtain, the legislature would have so stated. That the legislatures, in passing unemployment compensation acts, intended to draw away from the old definition is illustrated by the following statement contained in *Unemployment Comp. Commission v. Jefferson Standard Life Ins. Co.,* 215 N. C. 479, 2 S. E. (2d) 584:

"The scope and purpose of the present act are exceptional in breadth. The draftsmanship of the definition section, which gives flesh and sinew to the whole, shows a carefully considered and deliberate purpose to leap many legal barriers which would halt less ambitious enactments. As far as language will permit it, the act evinces a studied effort to sweep beyond and to include, by re-definition, many individuals who would have been otherwise excluded from the benefits of the act by the former concepts of master and servant and principal and agent as recognized at common law."

We need not attempt a definition of the relation necessary to impose a tax, because it is defined by the statute itself.

"It is unnecessary to determine whether the common law relation of master and servant exists between respondent and the barbers and other operatives in his shop, because the parties are brought within the purview of the unemployment compensation act by a definition more inclusive than that of master and servant." *McDermott v. State, supra.*

It is clearly apparent that the salesmen performed services for remuneration and came within the

provisions of the act, unless it be shown that they were exempt because of the exceptions contained in subparagraph (5) (i) (ii) (iii).

The tests are stated conjunctively, and not disjunctively; hence, all must concur before the act may be said to be inapplicable. *Mulhausen v. Bates, supra; In re Foy, supra.* The first condition in the statutory test relates to freedom of control and direction over the performance of services, both under contract and in fact. The test of freedom is either under contract or in fact. Did the company control and direct the performance of services, or did it have the right to do so under the contract, if it desired so to do? We are not here concerned with details, but with general control.

The second test of exemption relates to whether the service is either outside of the usual course of business for which it is performed, or that it is performed outside of all of the places of business of the enterprise for which the service is performed. There can be no question that the sale of the stock was a service performed in the course of the business of the company. Our only concern is whether those seeking exemption under the act are performing outside of all the places of business of the company.

The third test as to exemption coverage is that the individual is customarily engaged independently in an established trade, occupation, profession, or business. This would necessitate a showing by the company that its agents are established in the business of selling the stock independent of whatever connection they may have with the company.

The evidence does not show that any of the elements of the test exemptions classified in § 119 (g) (5) exist in this case. The salesmen were not free from control or direction over the performance of their

services, either under their contracts or in fact. They were required to limit their sales talk within the provisions of the prospectus prepared by the company. They were not permitted to negotiate any sales by mail, a restriction laid down by the company. The company was at liberty to terminate their employment any time. This right of termination was incompatible with freedom of control and direction over the performance of the services. *Kaus v. Unemployment Comp. Commission,* 230 Iowa 860, 299 N. W. 415.

The evidence does not show that the service was outside the usual course of the business for which it was performed, or that it was performed outside of all the places of business of the company. The salesmen, or some of them, attended sales meetings conducted by the company, and were at liberty to, and many of them did, use the office facilities of the company in negotiating with their customers. There is no evidence whatever that any of the salesmen were customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in their contracts of service.

Respondent contends that it was not the purpose of the legislature to include casual employment, such as that involved in this case, and that, if a reasonable construction is to be placed upon the act, a line must be drawn somewhere between (1) the salesman who has agreed to devote his full time to the marketing of the products of his employer, and (2) the salesman who has another occupation, and who sells only in his spare time, or as occasion may arise, without being under obligation to put in any definite amount of time and who expects merely to add to his income some amount offered for sales turned in. The answer to this argument is that the act makes no distinction between part-time or casual employment and full em-

ployment. The act clearly indicates a definite intention on the part of the legislature to include all employments except those specifically exempted by § 119 (g) (5).

The Federal act and the acts of some of the state legislatures do exempt casual labor, not in the usual course of the employer's trade or business. Had our legislature intended to exempt part-time or casual employment in the course of the employer's business, it would undoubtedly have so provided. Be that as it may, the act does not exempt casual employment, and, if any exception is to be made, it must be made by the legislature.

We conclude that the commissions collected by the salesmen who sold stock for respondent were subject to the unemployment compensation tax, and that the department reached a proper conclusion in so deciding.

The judgment will be reversed, with instruction to dismiss the action.

ROBINSON, C. J., BEALS, MAIN, BLAKE, JEFFERS, and DRIVER, JJ., concur.

STEINERT, J., dissents.