**CENTRAL NEW YORK INSULATING CO., Inc., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 5308.

United States District Court
N. D. New York.

Jan. 9, 1956.

---

Alfonse Damico, Syracuse, N. Y., Joseph J. Lyman, Washington, D. C., for plaintiff.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Anthony T. Dealy, Attorneys, Dept. of Justice, Washington, D. C., Bernard Burdick, Asst. U. S. Atty., Syracuse, N. Y., for U. S.

BRENNAN, Chief Judge.

This action is brought to recover taxes paid by the plaintiff under the provisions of the Federal Insurance Contributions Act, Title 26 U.S.C.A. § 1400 et seq., and the Federal Unemployment Tax Act, Title 26 U.S.C.A. § 1600 et seq. The period involved in this litigation extends from Jan. 1, 1948, through Dec. 31, 1951. The taxes, for which recovery is sought, were computed and paid upon the earnings of certain workers who are termed "salesmen" in this litigation.

The crux of the litigation is contained in the plaintiff's contention that the taxes, above mentioned, were paid under the mistaken impression that said salesmen were employees as defined in Title 26 U.S.C.A. § 1426(d) and Sec. 1607(i) when in fact they were independent contractors. The status of several salesmen is involved in this suit. It seems to be conceded however that the evidence of-

fered is to be applied as to each person upon whose earnings taxes were paid and that the decision will apply to each of them. In other words, the decision will define the status of the salesmen collectively rather than individually. Any computations made necessary by the decision are reserved to be agreed upon by the parties or determined by the Court.

It is obvious that the decision here will require that the facts pertaining to the business relationship of the plaintiff and the salesmen be examined and appraised. The evidence offered raises no serious factual dispute and the findings are set out below in narrative form.

The plaintiff is a corporation engaged in business at the City of Syracuse, N. Y. Its activities may be generally described as the furnishing and applying of home improvement products and materials to dwellings. The outlet for its materials and services was furnished through the medium of contracts therefor, executed generally by home owners who desired the benefit thereof. These contracts were obtained through the efforts of workers referred to herein as "salesmen". The status of other workers performing other services necessary under the contract is not here involved.

Prospective salesmen came in contact with the plaintiff generally through newspaper advertisements or by reference by other salesmen. The arrangement between the plaintiff and the salesmen was informal and entirely oral. Remuneration was entirely upon a commission basis, uniform for all salesmen. The relationship could be terminated by either party at will. The sole function of the salesmen was to sell the materials and services of the company of the plaintiff to property owners whose property was in need of repair.

Upon reaching an understanding that the prospective salesmen would render such services, the course of business generally followed a definite pattern, varying to some degree insofar as experienced and inexperienced salesmen were concerned. The salesman was given literature describing the materials to be

sold together with a price list therefor. He was also furnished with contract forms provided by the plaintiff. The use, with others, of a table in the office of the plaintiff was made available to him. The company 'phone was at his disposal. The company stationery was also available and stenographic services were furnished when necessary. The names of prospective customers, termed herein as "leads", were made available to the salesman and he was expected to return such lead slips with a notation thereon as to the result of his efforts directed towards obtaining a contract with the person named therein.

Generally the new salesman was placed in contact with a more experienced salesman and for a period of from two to four weeks he accompanied the more experienced man in his daily work thereby learning the mode of operation and the details of the contract proceedings. During the above period, the commissions earned as the result of the combined efforts of the new and experienced salesmen were divided as per agreement between them, generally upon a percentage basis, the terms thereof being reported to the plaintiff and payments made accordingly. After the so-called trial period, the new salesman was "on his own". Generally a drawing account, based upon the sales experience shown during the trial period and the needs of the individual was set up on the company's records. This drawing account was controlled by the plaintiff and so handled as to avoid any substantial overdrafts on the part of the salesman. The contract, obtained by the salesman, was submitted to the office of the plaintiff and was subject to the plaintiff's approval. Variations in the price as shown on the price list were permitted to be made by the salesman. In such event, such variation was reflected in the commission so that the plaintiff and the salesman shared equally in any diminution or increase thereof occasioned by the variation in price. It appears that the commission became due upon the acceptance of the contract.

The plaintiff exercised no control over the hours of the salesman's labor or the methods and manner in which he performed his work. It was usual for the salesmen to visit the office of the plaintiff or at least communicate therewith daily. The purpose of such visits being primarily to obtain new lead cards and to ascertain as to inquiries or messages involving the salesman. Sales meetings were held at the plaintiff's office at irregular intervals and occasionally manufacturers' representatives would attend such meetings, same being devoted to discussions and descriptions pertaining to the product to be sold. No particular territory was allotted the salesmen. No expense money was allowed him by the plaintiff in connection with his work.

## Discussion

The general problem involved in this litigation is discussed in the case of Silver v. United States, D.C., 131 F.Supp. 209. While that case involved a different class of workmen and a different factual background, the decision indicates in sufficient detail the guides to the conclusion to be made here.

█ It would appear to be without profit to again discuss the statutes, regulations and decided cases which are referred to in that decision and which I have in mind in making this decision. There is no dispute between the parties as to the elements which distinguish the independent contractor status from that of the employee. Control is the ultimate test and control of the methods and manner of the performance of the work is a weighty element in the final determination. All of the elements referred to in United States v. Silk, 331 U.S. 704, at page 716, 67 S.Ct. 1463, at page 1469, 91 L.Ed. 1757, are to be appraised. "It is the total situation that controls." Bartels v. Birmingham, 332 U.S. 126, at page 130, 67 S.Ct. 1547, at page 1550, 91 L.Ed. 1947.

The plaintiff relies upon the decision in Dimmitt-Rickhoff-Bayer Real Estate Co. v. Finnegan, 8 Cir., 179 F.2d 882 and the authorities cited and discussed there-

in. The defendant seems to rely upon Ringling Bros. Barnum & Bailey Combined Shows v. Higgins, 2 Cir., 189 F.2d 865. I do not consider the latter case as controlling the decision here. Unlike the performers in the Ringling case, the salesmen did not commit themselves for a specified time.

A summary of all of the evidence, the statutes and reported decisions lead me to the conclusion that the salesmen, referred to herein, are independent contractors rather than employees within the meaning of the applicable statutes and regulations and it is therefore concluded that the plaintiff is entitled to a judgment as demanded in the complaint, such judgment to be prepared by the plaintiff upon computations to be made and if not agreed upon, same may be settled on five days' notice and it is

So ordered.