**KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,**

**v.**

**William C. SNELL et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 21, 1958.

Rehearing Denied Jan. 30, 1959.

J. Wirt Turner, Jr., New Castle, Jack Q. Heath, Louisville, for appellant.

Berry & Floyd, New Castle, R. C. Ford, Owenton, for appellees.

STANLEY, Commissioner.

As the case reaches us it is a declaratory judgment that the appellant, Kentucky Farm Bureau Mutual Insurance Company, is required to afford coverage under a policy of automobile liability insurance which it had issued to the appellee William C. Snell for a claim being asserted against him by the appellee Robert Skinner for damages for personal injuries caused, as he alleges, by Snell's negligence in operating a truck. Skinner's counter-claim and cross-action were dismissed by the court without prejudice.

The appellant denies liability upon the ground that the injured man was Snell's employee at the time of the accident and as such employee was excluded from the coverage of the policy. The exclusion provision of the policy is this:

"This policy does not apply under Division A.

\* \* \* \* \* \*

"6. To bodily injury to or sickness, disease or death of any employee of the insured, arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any Workmen's Compensation Law [KRS 342.-001 et seq.], or (2) other employment by the insured;"

The question to be resolved is whether under the circumstances Skinner was in the insured's employment within the terms of the policy.

Snell owned and operated a farm of 150 acres adjoining a 750 acre farm of his father with whom he lived. Skinner was one of four sharecropping tenants on the father's farm, each of whom raised a tobacco crop. There was a general understanding and agreement that Snell and the four tenants would help one another in raising their five tobacco crops, going from place to place as it seemed best to work, according to the need or condition of the several crops at the time. It appears that each man would suggest that they work at his place on a certain day and they "got their heads together and agreed what they would do." There was nothing compulsory in the arrangement, and each man would decide for himself whether he would join the group in a particular day's work, but they usually all worked together. All of the men were experienced in growing and handling tobacco and knew just what should be done. The general run of the evidence is that "nobody was the boss" regardless of where the men happened to be working. But Skinner upon specific questioning testified that Snell would tell him and the other men such things as when he wanted his tobacco suckered and cut and where it should be housed.

In September, 1957, when the accident happened, the men were cooperating in cutting and hanging their tobacco. Snell usually furnished and drove his truck as part of his contribution to the joint work. The period for swapping work covered a relatively few days every year. Each man would keep account of the number of hours or days he worked in another man's crop. It usually turned out to be about the same; but if there was a difference of two or three days, it would be made up in equivalent work or in some other way, which was usually the payment of $4 per day when the tobacco crop was sold.

The group of neighbors had been engaged in cutting, hauling and hanging Snell's tobacco for about three days on September 3, 1957. At or near the close of the day's work, they decided to go to a cistern across a road to get a drink of water. When they arrived, Skinner made a handspring off the back of Snell's truck. Snell backed the truck (jerked it backward, according to Skinner) and ran over him, causing severe injuries.

The court sustained plaintiff's motion for a trial under Civil Rule 49, which relates to special verdicts, upon the issue of whether or not the relationship of employer-employee existed between Skinner and Snell. The court overruled motions by all parties for a directed verdict. He "determined as a matter of law upon the evidence submitted that the defendant, Robert Skinner, was rendering personal service for the defendant, William C. Snell, at the time of the injury, that said Robert Skinner was being paid for his work by said William C. Snell either in cash or in the return of an equivalent amount of work, and, further, that the only issue of fact remaining to be submitted to the jury should be submitted upon the instruction offered by the plaintiff in the form of an interrogatory as follows:

"The jury is instructed that they shall answer the following question:

"While they were working in Snell's tobacco crop, did Skinner and Snell recognize the right of Snell to control Skinner in the performance of the work with Snell's tobacco and to direct the manner and method of its performance?

"Answer 'yes' or 'no' ———————"

The jury answered "No." The court thereupon adjudged that the relationship of employer and employee did not exist between the defendants, Snell and Skinner, when Skinner was hurt and that the insurance company is required to afford coverage under its policy.

The appellant submits that there are only three legal capacities under which one can render personal service to another, namely, as an employee, as an independent contractor and as an uncompensated volunteer. We agree that the latter capacity may be readily eliminated. We think the evidence affords a reasonable conclusion that Skinner should not be regarded as an independent contractor.

There is a full treatment of the cases which have considered questions arising from the "Construction and application of provision of automobile liability policy excluding from coverage injury or death of employee of insured" in 50 A.L.R.2d 78.

The appellant submits definitions and rules laid down in the Restatement of the Law of Agency for determining the existence of the employer-employee relationship (§ 220) and argues that all the factors entering into the definition of an employee were shown in this record. As is reflected above, the trial court decided as a matter of law upon the undisputed evidence that all the factors of an employee relationship were present except that of control or the right of control by Snell of the physical performance of the service. Restatement, Agency, § 220(2) (2); Blair v. Boggs, Ky., 265 S.W.2d 795. The jury decided there was no such control.

The appellant contends that the court should have held as a matter of law that the injured man was in the insured's employment within the meaning of the policy exclusion provision, notwithstanding some conflict in the evidence concerning that control. Emphasis is placed upon Skinner's testimony that Snell would tell him and the other men what to do.

The appellees rely specifically upon Patty v. State Farm Mutual Automobile Insurance Company, 6 Cir., 1955, 228 F.2d 363, 365, which seems to be the only reported case of this class involving swapping of work. The facts are much like the present, and the policy provision of exclusion from liability is substantially the same. The District Court had ruled as a matter of law that Patty (the man injured), while working under a similar arrangement of swapping work, was an employee within the meaning of the exclusion provision. The facts were that Cunningham and Patty were near neighbors and for several years had exchanged friendly and neighborly services on their respective farms. While Patty and two others were helping Cunningham on his place in putting up his hay, Patty was injured through the negligent operation of an insured truck by Cunningham. There was never any agreement as to compensation of these men, one of the other, and it was said that whatever was done by any of them was upon a voluntary basis. Yet, Cunningham testified that in connection with the mowing of his hay he agreed to pay for some new parts of Patty's mower, which was being used. The appellate court, while saying, "The practice of 'swapping work' does not as a matter of law constitute employment," reversed the judgment and remanded the case for submission to a jury of the question of whether Patty was employed by the insured at the time of his injury. The court concluded that undisputed evidence could afford more than one reasonable inference of fact with respect to the factor of payment for the services. One such inference could be that Patty's service to Cunningham was in return for

like favors done by Cunningham, and another reasonable inference could be that Cunningham had agreed to pay for repairing Patty's mower, either as compensation or in order to make it fit for cutting his hay.

In Pennsylvania Casualty Co. v. Elkins, D.C., 70 F.Supp. 155, Judge Ford, of the Eastern District of Kentucky, in construing a similar insurance policy, pointed out that the exclusion of liability of "any employee" was the equivalent of "every employee" and held this precluded the view of an intention of the parties to the insurance contract to restrict the exclusion of coverage to regular employees of the insured. He construed the provision as having been designed to exclude every type of employer's liability other than that arising out of domestic employment, regardless of whether the employment was regular and continuous or incidental and temporary. The court therefore held that the exclusion embraced one who, while regularly employed elsewhere, had accompanied the insured on a trip for the purpose of aiding him in his work of hauling a load of cattle.

There is a diversity of opinion whether similar exclusionary provisions should be construed as referring only to persons in insured's regular employment and should not be applied to cases of merely casual or temporary employment. Notes, 50 A.L.R.2d 82, et seq.

While the injured man, Skinner, was engaged for only a few days in working for the insured, Snell, in reciprocation for like work by Snell for him, the work Skinner was doing was not merely casual. It was according to an annual custom among neighbors. The work was substantial and a necessary part of the job of harvesting Snell's tobacco crop.

As stated above, the trial court held upon the undisputed evidence that all the several elements that enter into the relationship of employer and employee (or master and servant, as it is technically and often called) were present except the element of right of control and direction in the performance of the work. As the court observed in Patty v. State Farm Mutual Automobile Insurance Co., supra, 228 F.2d 363, in this case two reasonable conclusions or inferences could well be drawn from the evidence upon this point of fact. That simple issue was submitted in a simple question asked of the jury. It answered that the two men did not recognize any right of control. That essential element of the relationship being absent, the court properly adjudged that Skinner was not in Snell's employment when he was injured by the automobile, and that the exclusion from liability provision in the insurance policy did not apply.

The judgment is affirmed.