WALTER J. MEYER ET AL., APPELLEES AND CROSS-APPELLANTS, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A CORPORATION, APPELLANT AND CROSS-APPELLEE, IMPLEADED WITH RAYMOND W. FOREMAN ET AL., APPELLEES AND CROSS-APPELLEES.

224 N. W. 2d 770

Filed January 2, 1975. No. 39492.

Ray C. Simmons, for appellant.

Barlow, Watson & Johnson, for appellees Meyer et al.

Mattson, Ricketts, Davies, Stewart & Calkins and

Knudsen, Berkheimer, Endacott & Beam, for appellees Foreman et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Appellant, State Farm Mutual Automobile Insurance Company, appeals from a declaratory judgment finding that appellee Walter J. Meyer was an employee of his son, appellee Warren Meyer, State Farm's insured, under a work arrangement agreement. We reverse.

The accident which gave rise to this litigation arose during the operation of a farm tractor on a highway in Seward County, Nebraska. The issue presented is whether or not at the time of that accident Walter J. Meyer was an employee of his son Warren Meyer within the terms of the following provision of a State Farm policy: "Insured — means * * * (5) under coverage AF, any employee of an insured with respect to agricultural vehicles and implements while engaged in his employment by an insured."

The father and son, along with two neighbors, Eicher and Schmidt, had been involved for several years in what has been characterized as a "work exchange" program in which each of the parties aided with particular tasks on the farms of each of the others. Warren was putting up hay on his own land with the assistance of his father and two neighbors. Warren supplied a tractor, rake, and baler. Eicher brought a tractor and started raking the hay. Warren followed with his baler. When Walter and Schmidt arrived, they were informed that another tractor and trailer were required in addition to the trailer in the field. At Warren's suggestion Walter and Schmidt left in Schmidt's car to get Walter's tractor and Schmidt's trailer. After attaching the trailer to the tractor, Schmidt returned to the hay field in his car and

Walter started back pulling the trailer with the tractor.

On the trip to Warren's hay field, and before he reached it, Walter was involved in an accident in which Raymond W. Foreman was injured. Foreman brought an action against Walter. Walter and Warren each carried liability policies of $25,000 with State Farm. Coverage under Walter's policy was admitted. This action was brought to determine coverage for the father, Walter, under Warren's policy.

Warren testified that when the three others came over to his farm, he decided what equipment the other three would bring and when they would start baling hay. He also decided where to put the hay. It was the practice that whoever owned the hay to be cut would be the person to give the orders, and it was the understanding among the parties that the owner of the land gave the directions.

Schmidt testified that the four of them never discussed the particular legal relation between them in exchanging labor operations. They never discussed whether they were employers or employees. They just helped each other out and didn't discuss anything along those lines. They were neighbors and they had to get along and needed each other's help. It was a neighborly and Christianly thing to do, and that was at least part of the basis of their exchange of work among themselves. When he worked on the farms of the other three in these exchange of labor operations, he did not consider himself their employee, and when they worked on his farm he did not consider himself their employer. When he went over and helped Warren with his haying operation he expected Warren to come back later and help him with his. That was the agreement. He traded his services for Warren's services.

The parties to this appeal agree that this case presents one of first impression in Nebraska. Appellant asserts it is a case of first impression nationally. Appellees,

however, claim that similar facts have been found to support a finding of an employer-employee relationship on two occasions in Iowa: Ganszhorn v. Reep (1943), 234 Iowa 495, 12 N. W. 2d 154, and Erickson v. Erickson (1959), 250 Iowa 491, 94 N. W. 2d 728.

Ganzhorn v. Reep, *supra,* involved an action between two neighboring farmers for injuries resulting from an automobile accident. Defendant had called plaintiff and asked him for assistance in fixing a broken pump. After working for a time, defendant determined it was necessary to go to town for additional equipment. Defendant asked plaintiff to ride with him since nothing more could be done until he returned. On the ride to town the accident occurred. The record indicates that for several years plaintiff and defendant had exchanged work with each other. No money ever changed hands and no accounting of time took place. The trial court submitted the question of master-servant relationship to the jury and the jury returned a verdict for the plaintiff, which was affirmed.

In Erickson v. Erickson, *supra,* the plaintiff and defendant were brothers. They had exchanged work over the years, had kept accounts of time spent, and made cash payments to settle any imbalance. Plaintiff had been called to do chores for defendant while he was away. In performing those chores plaintiff was injured while working with certain machinery owned by defendant. The trial court, sitting without a jury, found an employer-employee relationship existed. The judgment for the plaintiff was affirmed.

In Patty v. State Farm Mut. Auto. Ins. Co. (Tenn., 1955), 228 F. 2d 363, the United States Court of Appeals for the Sixth Circuit held the practice of swapping work does not as a matter of law constitute employment. A judgment for the insurer was reversed to determine whether the agreement of the insured to pay for new parts for the mower was by way of com-

pensation to the plaintiff, or to make the mower fit for operation.

St. Aubyn v. Thogmartin (1970), 206 Kan. 62, 476 P. 2d 248, involved the definition of "employee" within an employee-exclusionary clause of an insurance policy. The driver of a newspaper delivery truck brought a third-party action against the insurer for a declaratory judgment, alleging that the insurer was obligated to defend him and pay within policy limits any judgment obtained against him by a newsboy who was injured in a collision while throwing newspapers from the truck. The Kansas Supreme Court determined that the driver, who was an old friend of the truck owner, had volunteered to drive the truck for the owner without any agreement for compensation, while the owner went on a hunting trip. The court held the subsequent payment of $5 was a gratuity and sustained a finding that the driver was not an employee within the exclusionary clause of the owner's policy.

In Bean v. Gibbens (1954), 175 Kan. 639, 265 P. 2d 1023, a neighbor boy was killed while guiding insured's truck which was being towed into town. Nothing was said about pay, and no pay was offered. The Kansas Supreme Court held the boy was not an employee within a clause of a liability policy excluding coverage of employees of the insured.

Kentucky Farm Bureau Mut. Ins. Co. v. Snell (Ky. App., 1958), 319 S. W. 2d 462, involved a member of a group of neighbors who voluntarily helped each other in harvesting their tobacco crops, keeping track of the hours worked, and agreeing to make up any difference in amount of work performed by payment of an agreed amount. The trial court submitted to the jury the question of control of the neighbor while working. The jury found against the plaintiff. The Kentucky Court of Appeals affirmed, holding the injured man was not

an employee of the neighbor owning the truck upon which the accident occurred.

Usually any labor supplied by a father to a son is presumed to be gratuitous. See cases collected on this point in Annotation, 7 A. L. R. 2d at p. 88. The presumption of gratuity, however, with respect to the services of a parent is a rebuttable one. It may be overcome by proof of an express contract regarding compensation or of such facts and circumstances as show an understanding of the parties that payment was to be made. In the absence of such proof, recovery will be denied. Houser v. Houser (1965), 178 Neb. 401, 133 N. W. 2d 618.

Warren could not recall any cash payments with any of the other three parties when the four exchanged labor. If somebody felt he was on the short end at the close of the year, there would be a settlement of some kind. This was usually balanced, however, by supplying more labor and machinery. The exchange of work was apparently taken for granted, as the record does not reveal any specific promises regarding it.

Warren testified that he and his father, in addition to the trading of labor with the other two men in haying operations, traded other labor and equipment between themselves. Much of their equipment was owned jointly. They exchanged considerable labor and equipment at harvest time and generally quite a bit at ground preparation time. Warren was farming about 400 acres, his father about 160. Warren testified he thought their work averaged out because he did the fertilizing for his father and also did his baling and his planting.

It is undisputed the father was to get some benefit out of the hay that was being harvested from the son's field. The father had no native hay. At the time of the accident he was doing some feeding. The hay being harvested from the son's field was to be taken to

the father's barn for storage even though the son had a barn on his own farm. When the son was asked whether there was any reason his father had not used Schmidt's tractor, he answered: " 'Well, there was really no reason to use his (Schmidt's) tractor, he was getting, or going to get no benefit out of the, out of that particular hay.' " The son conceded that although he owned the hay his father was benefited by it in that "It was there if he needed it." He testified his father did use some of the hay. Another reason the son gave for using his father's tractor was that he and his father always exchanged help and machinery.

The relationship of master and servant is a contractual relationship. Barton v. Hobbs (1967), 181 Neb. 763, 151 N. W. 2d 331. We there held: "The contract under which service is performed and the performance thereunder determine the relationship between the contracting parties." Ordinarily, such a contract requires a consideration. See 53 Am. Jur. 2d, Master and Servant, § 18, p. 95. The exchange of work could meet this requirement for the other two parties involved. An exchange of work arrangement between a father and son, however, poses a different question because of the presumption that such services are generally considered to be gratuitous.

In the case of the ordinary master and servant arrangement, we have announced the following rule: "The right of control, or want of it, determines if the relation of master and servant, at the particular time in question, existed between the employee and his general employer, * * *." Kessler v. Bates & Rogers Constr. Co. (1951), 155 Neb. 40, 50 N. W. 2d 553.

In determining whether an individual is a servant as distinguished from an independent contractor, the basic test is whether or not his physical conduct in the performance of the service is controlled or subject to the right of control. A pertinent question in this

respect is whether under the arrangement the workman only possesses the same independence that employees in general enjoy. See Sandrock v. Taylor (1970), 185 Neb. 106, 174 N. W. 2d 186.

The facts of each particular case must be considered in determining whether a master and servant relationship exists. Premised upon the test as to whether the participants in the work exchange agreement only possessed the same independence that employees in general enjoy, we would determine them to be independent contractors. It is evident from the record they had more independence than employees in general. While the owner of the premises told the other participants what he wanted done, he did not tell them how they had to do it. They did it their own way without instruction or control from him.

Appellees premise their action herein on their claim that the son controlled the haying operation so that the father and the other two men were employees. The son decided when he thought his hay was dry enough to be cut and baled; what equipment was needed and to be used in the haying operation; what work was to be done, and who was to do it; and where the hay was to be taken. Appellant, however, points out that these matters simply control the result of the work and that such control does not change the workmen from independent contractors to employees. Appellant argues the when, what, who, or where was not controlling the manner of the work. Appellant suggests this is illustrated by the answer to the following question asked Mr. Schmidt: "And you told these fellows how to do it?" to which he gave the answer: "They know how to do it. I told them what I wanted done and so forth."

In this case there was no agreement de facto or otherwise for close supervision of the work. The men were all farmers with expert knowledge of the work at hand, and proceeded accordingly. The work was of a semi-

skilled nature. Some of the tools and equipment were supplied by the alleged servants. They received no pay, only helped at short intervals and without regular hours, in a specific area, in connection with the regular farming business of Warren. The record does not indicate that the farmers exchanging labor regarded themselves as servants or employees. Actually, the record indicates otherwise, as indicated by the testimony of Schmidt set out heretofore.

A pertinent question, if we regard the present circumstances as establishing a master and servant relationship, is when did it actually commence? Can it be said that its inception occurred when the four men involved met for coffee in the morning and decided to put up the hay that afternoon? Or, when Walter, Eicher, and Schmidt left their own farms enroute to Warren's; or upon arrival; or upon commencing work? It would have to be conceded that the latter is the only possibility. As to Walter, he had never commenced work, but instead left the field at once to get his tractor. It was his own tractor, over which he had exclusive control, which he was operating at the time of the accident. The accident occurred before he reached the place where the tractor was to be used. In this respect, the case before us is definitely different from the situations found in the two Iowa cases relied upon by appellees. In Ganzhorn v. Reep, *supra*, the injured party was riding in the defendant's automobile enroute to the place where he was to assist the defendant. In Erickson v. Erickson, *supra*, the injured party was working on defendant's farm with defendant's machinery.

Appellees concede that while Schmidt was driving his car to take Walter to get his tractor he was not under Warren's control. They further concede that while the father was operating the tractor from his farm to the Schmidt farm to get the Schmidt trailer,

and while he was bringing the tractor and the trailer to the hay field, he was not under the son's control. They contend, however, that the father was doing what the son asked him to do, and in doing so, he was under Warren's direction.

Warren and his father exchanged help and machinery in addition to the four-member exchange with Eicher and Schmidt before the date of the accident. Warren did not charge his father for the work that he did for him. He and his father were not partners but did own machinery together and often worked together. The machinery which they used together was bought by both of them, with the cost of the combine shared about equally. However, the father supplied more money on the disc than Warren. As of the date of the accident, Warren's father would have supplied slightly more of the financing than Warren.

Exchange of work arrangements are common in this state. Also, it is not unusual for neighbors to do the work of a farmer who is temporarily ill or disabled, with the implied understanding by all concerned that the sick farmer will return the favor if and when he is able. In the latter situation, however, someone other than the farmer organizes the group and suggests the manner in which the work will be done and by whom the equipment will be furnished. In the usual work exchange arrangements, it is the owner of the premises where the work is to be done who decides when the work should be done and what equipment will be needed. Other than apportioning the work among those involved, there is none of the usual control exercised by an employer over an employee. We are convinced that in none of these situations do the parties involved think of themselves in terms of being masters and servants or employers and employees. As Schmidt testified, he did not so consider himself but he did expect Warren to perform like services for him when the need arose.

It is an exchange of work between equals. In exchanging work, farmers are not selling their time but are simply assisting a neighbor to get a job done with the expectation that the neighbor will return the favor. If we are to sustain the judgment herein, we must give a much broader construction to the terms "master" and "servant," and "employer" and "employee" than we have done heretofore. To affirm the judgment would require us to hold that the word "employee" is to be interpreted as inclusive of any and every person who may happen at the time of the accident to be rendering some service to the insured, whether that service be occasional, incidental, casual, gratuitous, or the mere expression of a neighborly act. This we refuse to do. The usual exchange of work arrangement does not as a matter of law constitute employment so as to create an employee and employer relationship. Stripped to its essential element, we hold the fact that Walter was bringing his own tractor to his son's farm at the son's request did not make him an employee of the son at the time of the accident which occurred before he reached the son's farm.

The judgment herein is reversed, and the petition is dismissed.

REVERSED AND DISMISSED.

CLINTON, J., dissenting.