ERSPAMER ADVERTISING COMPANY, A NEBRASKA
CORPORATION, APPELLEE, V. DEPARTMENT OF LABOR OF
THE STATE OF NEBRASKA ET AL., APPELLANTS, AND
RICHARD G. PAULSON, APPELLEE.
333 N.W.2d 646

Filed April 15, 1983. No. 82-421.

Pamela A. Mattson, for appellants.

Joseph J. Skudlarek of Schumacher, Skudlarek, Raynor & Smith, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, HASTINGS, and CAPORALE, JJ., and BRODKEY, J., Retired.

BOSLAUGH, J.

The Department of Labor has appealed from the judgment of the District Court reversing the determination by the Nebraska Appeal Tribunal that Richard G. Paulson, a salesman of advertising specialties for the appellee, Erspamer Advertising Company (Erspamer), was an employee.

In October 1980 Richard G. Paulson entered into a "salesman agreement" with Erspamer, a company which sells advertising specialties. The contract provided that (1) Erspamer could designate the

salesman's territory; (2) compensation was to be on a commission basis only; (3) commissions were payable on a monthly basis and not due until the customer had paid; (4) bonuses would be paid under certain circumstances; (5) errors would be charged against the salesman's account; (6) all samples remained the property of Erspamer; (7) the salesman was deemed an independent contractor and no income would be withheld for tax purposes nor would social security or unemployment taxes be paid by Erspamer; (8) the salesman was to pay all traveling expenses and must carry automobile insurance; (9) no advance would be made; (10) Erspamer would not be liable for delay in filling orders; (11) the salesman agreed not to compete; and (12) the agreement could be terminated at the option of either party.

Paulson testified that he was paid on a straight commission basis and determined his own hours. He could set his own prices. No office or telephone was provided by Erspamer, and Paulson did not receive a car or expenses. Paulson could have sold outside the agreed upon territory and was free to work for another while he was under contract with Erspamer. Paulson did not have to report in to the office, but could mail his orders in.

On March 27, 1981, Paulson terminated his arrangement with Erspamer and decided to seek salaried employment because he was "financially unsuccessful as a commission salesman." Paulson then filed a claim for unemployment benefits.

On April 8, 1981, Paulson was notified of the claims deputy's determination that Paulson would not receive benefits on the basis of the wages earned at Erspamer, since his relationship had been on a straight commission basis. Benefits to Paulson were then charged against a prior employer, Blue Cross/Blue Shield, and were based on the amount of wages earned there. A reduction was assessed because he had voluntarily left his employment there.

On April 23, 1981, Erspamer was notified by the chief of contributions that the deputy's determination had been reversed. Paulson was now determined to be an employee, rather than an independent contractor, of Erspamer. Erspamer was assessed for a contribution, and benefits to Paulson were to be based on the amounts he earned at Erspamer. The benefits to Paulson were less than those which were based on his Blue Cross wages. Again, a reduction in benefits was assessed because he had voluntarily left Erspamer.

Erspamer appealed from the decision of the chief of contributions to the Nebraska Appeal Tribunal, which affirmed the determination that Paulson was an employee of Erspamer.

Erspamer then appealed to the District Court, which found that Paulson was an independent contractor. The Department of Labor appeals from that decision. The review here is de novo on the record. Neb. Rev. Stat. § 48-640 (Reissue 1978). *Glionna v. Chizek,* 204 Neb. 37, 281 N.W.2d 220 (1979); *Heimsoth v. Kellwood Co.,* 211 Neb. 167, 318 N.W.2d 1 (1982). We are required to retry the issues of fact involved in the findings complained of and reach an independent conclusion.

The only issue on the appeal is whether Paulson was an employee or independent contractor. Neb. Rev. Stat. § 48-604(5) (Reissue 1978) provides: "Services performed by an individual for wages shall be deemed to be employment, unless it be shown to the satisfaction of the commissioner that (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact, (b) such service is either outside the usual course of the business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed, and (c) such individual is

customarily engaged in an independently established trade, occupation, profession, or business."

The department reasons that the beneficent purpose of the unemployment compensation act requires that § 48-604(5) be construed such that a person will be deemed an employee (and thus entitled to benefits) more readily than if the common-law test is used. Erspamer contends that the ABC test is merely a codification of the common-law test of independent contractor.

The test for determining whether a person is an employee or an independent contractor as expressed in § 48-604(5) is known as the "ABC test." W. Malone, M. Plant & J. Little, Cases and Materials on Workers' Compensation and Employment Rights 505 (2d ed. 1980). The Department of Labor urges that the three conjunctive criteria of this test are the only ones which may be considered in determining status for purposes of unemployment compensation. Only if each factor is met can one be deemed an independent contractor. In contrast, the common-law test for independent contractor includes many factors which are to be considered and weighed in making the determination, no one of which may be conclusive.

Generally, control or the right of control is the chief criterion in the determination of whether one acts as an independent contractor. *Maricle v. Spiegel,* 213 Neb. 223, 329 N.W.2d 80 (1983). "However, even the employer of an independent contractor may, without changing the status, exercise such control as is necessary to assure performance of the contract in accordance with its terms." *Stephens v. Celeryvale Transport, Inc.,* 205 Neb. 12, 20, 286 N.W.2d 420, 425 (1979).

The Restatement (Second) of Agency § 220 (1958) lists the following ten factors to be considered in determining whether a person is an employee or an independent contractor: "(2) In determining whether one acting for another is a servant or an independent

contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work [A of the ABC test];

"(b) whether or not the one employed is engaged in a distinct occupation or business [C of the ABC test];

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer [B of the ABC test];

"(i) whether or not the parties believe they are creating the relation of master and servant; and

"(j) whether the principal is or is not in business."

This issue was addressed by this court in *Hill Hotel Co. v. Kinney*, 138 Neb. 760, 763, 295 N.W. 397, 398 (1940). In that case we said: "While there is a diversity of views among the courts on this subject and the opinions are not always unanimous, the weight of authority is that legislatures in enacting unemployment compensation statutes did not intend to depart from the common-law definition of 'independent contractor.' "

In *Hill Hotel Co.*, supra, we quoted with approval from *Washington Recorder Pub. Co. v. Ernst*, 199 Wash. 176, 91 P.2d 718 (1939) (in effect overruled in *Sound Cities Gas & Oil Co. v. Ryan*, 13 Wash. 2d 457, 125 P.2d 246 (1942)). We said at 762-63, 295 N.W. at

398: "The provisions quoted from the Nebraska statute are found in the unemployment compensation law of Washington and in construing them the supreme court of that state said:

" 'In the Restatement of the Law of Agency, nine different items are recited as the principal elements to be considered in determining which relationship exists. In the enactment of the unemployment compensation statute, the legislature selected or picked out three elements to be considered. The legislature did not say, nor is the language capable of that interpretation, that each of those elements must exist one hundred per cent in order to establish the relationship of independent contractor. * * *

" 'The courts have never held that, in the determination of the relationship of independent contractor, there must be an absolute and complete freedom from control. The common law test and the statutory test are the same. * * *

" 'In drafting the statute, the legislators attempted to codify the common law. They intended that the common law test of employment relationship should likewise be the test under the unemployment compensation act.' *Washington Recorder Publishing Co. v. Ernst*, 199 Wash. 176, 91 Pac. (2d) 718, 124 A.L.R. 667."

After noting that the common-law definition was adopted in the workmen's compensation laws, the opinion states at 764, 295 N.W. at 399: "In both the workmen's compensation law and the unemployment compensation law, the lawmakers legislated on labor problems and it should not be held without sound reasons that they intended to vary the status of independent contractors under the two intimately related statutes. The point in controversy was elaborately argued by counsel on each side with reference to statutes, opinions of courts and rulings of preliminary tribunals. It was earnestly insisted on behalf of claimant that the legislature had power to change the common law adopted in this state and

make legislative definitions applicable to new enactments; that such power was exercised in the present instance, but that, even if the common-law tests are applied, claimant is entitled to an allowance for unemployment compensation under the facts. Though the argument is plausible, the rulings quoted from the supreme court of Washington seem to be based on better reasons and precedents and are adopted for the purpose of a decision on this appeal.''

The department argues that *Hill Hotel Co.*, *supra*, is not controlling on the issue and in effect urges that the decision in the *Hill* case be overruled.

Generally, where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of its intent. *The People v. Hairston*, 46 Ill. 2d 348, 263 N.E.2d 840 (1970), *cert. denied* 402 U.S. 972, 91 S. Ct. 1658, 29 L. Ed. 2d 136 (1971); *Santanelli v. City of Providence*, 105 R.I. 208, 250 A.2d 849 (1969). See *State v. Hocutt*, 207 Neb. 689, 300 N.W.2d 198 (1981).

While the department cites authority in support of its position, see, e.g., *Sound Cities Gas & Oil Co.*, *supra*, we are not persuaded to ignore this general rule and overrule the decision in *Hill Hotel Co.* See *Lincoln Woman's Club v. City of Lincoln*, 178 Neb. 357, 133 N.W.2d 455 (1965).

As at the time *Hill Hotel Co.* was decided, there is conflicting authority on the issue of the construction to be given the ABC test. However, the following statement from W. Malone, M. Plant & J. Little, *supra* at 505, reveals two additional reasons to reaffirm the decision in *Hill Hotel Co.*: ''At one time more than half the states utilized a tax scheme that basically covered 'any service' performed by an individual. To be exempt from taxes with respect to remuneration paid a worker, an employer had to show that the worker: (A) was free from control or direction over the performance of his services, both under his contract of service and in fact; and (B) the

service was either outside the usual course of the business or was performed outside of all the places of the enterprise; and (C) the worker was engaged in an independently established trade, occupation, profession or business. . . . Although this so-called 'ABC test' was intended to broaden coverage beyond that provided by the common law master-servant test, the controlling importance of the master-servant test in the federal unemployment tax act has apparently caused it to fall into disuse.''

The Employment Security Law is designed to cover ''any service'' except services exempted under the ABC test. § 48-604(1) and (5). As the above-quoted paragraph implies, the effect of this scheme is that all services performed will be covered if the ABC test is broadly interpreted. It is difficult for a situation to exist which meets each of the conjunctive elements of the ABC test. See, e.g., *Ross v. Cummins,* 7 Ill. 2d 595, 131 N.E.2d 521 (1956) (commission salesmen are employees); *Dep't v. Charlie's Barber Shop,* 230 Md. 470, 187 A.2d 695 (1963) (lessees of barbershop chairs are employees); *Young etc. v. Indiana Emp. Sec. Bd.,* 134 Ind. App. 263, 187 N.E.2d 489 (1963) (taxi drivers are employees). The exemption becomes meaningless if it does not exempt anything from the statutory provisions.

A second reason to hold that § 48-604(5) is a codification of the common law rests in the fact that the Federal Unemployment Tax Act defines ''employee'' as ''any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of employee.'' I.R.C. §§ 3121(d)(2) and 3306(i) (1976).

Although the system is a complicated one, unemployment insurance is a coordinated federal-state program. Simply put, the program is financed from two taxes imposed on employers based upon wages paid for employment: one tax payable to the federal government and the other payable to the state.

A credit is available against the federal tax based on the amount of state tax paid into a state unemployment system. State taxes are deposited in the U.S. Treasury and placed into the state's benefit account. Benefits are payable only through state law. Those who must contribute are defined in both state and federal statutes. If no state law existed, the entire federal tax would be due from employers and no benefits would be payable to residents of that state. If no state tax were due, the entire federal tax would be deposited into the Treasury General Fund, not the state account.

The federal law establishes standards which must be met by the state law before the state can enter the program. For example, each state must create an agency with full powers to cooperate with the federal authorities. See, 26 U.S.C. §§ 3301 et seq. (1976); 42 U.S.C. §§ 502 et seq. (1976); 29 U.S.C. § 49 (1976) (the Wagner-Peyser Act); 1B Unempl. Ins. Rep. (CCH) ¶ 1001 (Sept. 22, 1980); W. Malone, M. Plant & J. Little, *supra* at 498-500.

Under this scheme an employer would not be held liable to pay federal taxes for one not an employee under common-law rules, but might be liable under a state's ABC test. *Central New York Insulating Co. v. United States,* 138 F. Supp. 236 (N.D. N.Y. 1956) (salesman is independent contractor). To avoid such situations some courts and legislatures have attempted to harmonize state and federal regulation where possible. See *Pioneer Potato Co. v. Div. of Employment Security,* 17 N.J. 543, 547, 111 A.2d 888, 890 (1955): "The state statutes form an integral part of the national plan and are designed to work closely with the federal legislation." The New Jersey court stated that there is an obvious need to harmonize state law with the federal act. See, also, *Space v. Div. of Employment Sec.,* 60 N.J. Super. 380, 159 A.2d 131 (1960). See, also, *Smith v. Arizona Dept. of Economic Sec.,* 128 Ariz. 21, 623 P.2d 810 (1980), in which the Legislature enacted a change to

conform with federal law. In that case truckers were held to be independent contractors. In W. Malone, M. Plant & J. Little, *supra*, the authors comment at 504: "Because of the close nexus between the state and federal taxes, state statutes typically track the exact language of the federal unemployment tax act in defining who pays the tax." Since taxes are payable only for those who are employees, the definition of that term is an important consideration in determining who must pay the tax.

In the present case Erspamer exercised little control over Paulson's hours, method or manner of performance, or the prices he charged. Paulson was free to hold another job and was free to expand his territory if he so desired. The occupation of salesman does not require a particular skill, nor is it usually performed by a specialist. Erspamer provided the salesman's samples but did not provide a car, a phone, or office space to its salesmen. Paulson performed his work off the premises of Erspamer's place of business. The contract was of no specific duration and was terminable at the option of either party. Payment was not on a salary basis but was on a commission or percentage of the sale basis. The contract provided that the relationship was that of independent contractor; no withholding or social security taxes were paid by Erspamer in Paulson's behalf.

After weighing and considering these factors, we conclude that Paulson was an independent contractor of Erspamer. While not conclusive of such status, weight must be given the contractual understanding of the parties. Paulson was not on a salary; Erspamer exercised little control over Paulson's performance and provided no facilities or transportation to Paulson. These factors considered together sustain a finding that Paulson was an independent contractor.

For cases applying these principles, see, *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983) (fran-

chise owner as independent contractor); *Stephens v. Celeryvale Transport Co.*, 205 Neb. 12, 286 N.W.2d 420 (1979) (tractor lessee as independent contractor); *Meyer v. State Farm Mut. Auto. Ins. Co.*, 192 Neb. 831, 224 N.W.2d 770 (1975) (agricultural worker); *Voycheske v. Osborn*, 196 Neb. 510, 244 N.W.2d 74 (1976) (maintenance worker).

The judgment of the District Court is affirmed.

AFFIRMED.

WHITE, J., participating on briefs.

KRIVOSHA, C.J., dissenting.

I regret that I must respectfully dissent from the majority opinion in this case. The majority has declared that the standards prescribed in Neb. Rev. Stat. § 48-604(5) (Reissue 1978) are not exclusive in determining whether an individual is an employee or an independent contractor. In my view the majority is in error. Absent the statute, the right of action would not here exist. For the majority to therefore suggest that a statutory right may be expanded by incorporating common-law definitions, not for the purpose of gleaning intent but, rather, for the purpose of defining an otherwise statutorily defined term, defeats the very purpose of the statutory action. A reading of § 48-604(5) makes it clear that the Legislature was intending to broaden the definition of employee and narrow the definition of independent contractor. The common-law definitions of employee and independent contractor for common-law causes of action cannot be used to expand a statutory right in which the term is clearly defined. There is no ambiguity in this act requiring interpretation by us, and the majority's use of such common-law definitions is, in my view, misplaced. In my view we were wrong in *Hill Hotel Co. v. Kinney*, 138 Neb. 760, 295 N.W. 397 (1940), and we are wrong here.